S99A1738. ROMANO v. THE STATE.
(527 SE2d 184)

SEARS, Justice.

Appellant Joseph Victor Romano appeals the trial court's denial of his motion to withdraw his pleas of guilty to two charges of murder.[1] We find that appellant's pleas were entered knowingly, intelligently and voluntarily, that there was a sufficient factual basis for the trial court to accept the pleas, and that appellant received effective assistance from his trial counsel prior to entering his pleas. Therefore, we affirm.

In January 1997, law enforcement officers discovered the bodies of Mike Rogers and Vicki White at a residence located in rural Mitchell County. Appellant Joseph Romano was soon identified as a suspect in the murders. Shortly thereafter, appellant surrendered to law enforcement officers in Denver, Colorado, and was returned to Georgia, where he gave a statement in which he confessed to shooting Mike Rogers, but denied shooting Vicki White. After appellant was arrested, he was appointed counsel to assist him at trial. The week before his trial was scheduled to begin, appellant entered pleas of guilty to two counts of murder, and was sentenced to two life sentences, to run concurrently. Appellant then filed a pro se motion to withdraw his guilty pleas, and was appointed different counsel to

---

[1] The crimes occurred on January 18, 1997. On July 18, 1997, appellant pled guilty to two counts of murder and was sentenced to two concurrent life sentences. On September 30, 1997, appellant filed a motion to withdraw his guilty pleas. The motion was amended on March 3, 1998, and denied by the trial court on July 2, 1999. Appellant's notice of appeal was timely filed on July 20, 1999, appellant's appeal was docketed in this Court on August 23, 1999, and the appeal was orally argued on November 8, 1999.

assist with that motion. Appellant appeals the denial of his request to withdraw his pleas.

1. Appellant contends the trial court erred in accepting his guilty pleas because there was an insufficient factual basis to support the pleas. "Notwithstanding the acceptance of a plea of guilty, judgment should not be entered upon such plea without such inquiry on the record as may satisfy the judge that there is a factual basis for the plea."[2] In order to satisfy this requirement, a trial court accepting a guilty plea must subjectively determine that there is a factual predicate for the plea by making inquiry on the record.[3]

The record shows that at the plea hearing, appellant informed the trial judge that he had read the indictment against him, understood the charges levied against him, and had no questions concerning the charges or the proceedings. He then informed the court that he wished to plead guilty to the two murders, that the decision to plead guilty was his own decision, and that he was in fact guilty of the murders. Thereafter, the trial court heard testimony from a Mitchell County law enforcement officer describing the murder scene and the circumstances of the murder; the identification of appellant as a suspect; appellant's discovery in Denver; and the statement appellant gave to officers upon his return to Georgia, in which he admitted having shot Mike Rogers, but claimed that it was Rogers who had shot Vicki White. The trial court also accepted photographic evidence of the murder victims. Finally, the trial court heard appellant's written statement, read by counsel, in which appellant expressed regret for his actions, accepted full responsibility for his actions, and stated that his decision to plead guilty was based upon his desire to spare "everyone involved in this tragedy" the additional pain and suffering associated with a trial.

Under these facts, we conclude that there was a sufficient factual basis for the appellant's guilty pleas, and therefore the trial court did not err in accepting the pleas.[4]

2. Appellant contends that the trial court erred in finding that he received effective assistance from his trial counsel when entering his guilty plea. Appellant contends that prior to his arraignment, he sent several letters to his court-appointed counsel, attorney Ernest Sheffield, requesting they meet to discuss his case, and that in response, Sheffield told appellant there was no evidence to review before the arraignment. Two days after his arraignment (at which he pled not guilty), appellant wrote the trial judge and asked that attorney Shef-

---

[2] Uniform Superior Court Rule 33.9; see *State v. Evans*, 265 Ga. 332 (454 SE2d 468) (1995).

[3] *Evans*, 265 Ga. at 334-335. See *Battle v. Williams*, 268 Ga. 35 (485 SE2d 204) (1997).

[4] See *Brown v. State*, 271 Ga. 550 (522 SE2d 230) (1999).

field be replaced. Thereafter, Sheffield met with appellant to discuss appellant's request, and assured appellant that he would be prepared for trial. At Sheffield's request, appellant again wrote the trial judge and explained that he wished to keep Sheffield as his attorney.

Before his trial was set to begin, appellant met with Sheffield to discuss a possible plea arrangement. At that meeting, appellant urged Sheffield to attempt to arrange a plea agreement wherein appellant would plead guilty to voluntary manslaughter. Sheffield conveyed this plea offer to the prosecutor, who rejected it. Thereafter, the week before his trial began, appellant agreed to plead guilty to two counts of murder, and the State agreed not to prosecute a lesser charge. Appellant contends that at that time, Sheffield promised appellant he would be paroled after 14 years. Appellant contends that he was effectively forced to plead guilty to the murder charges because Sheffield had not prepared adequately for the trial which was about to begin, and induced to plead guilty by Sheffield's misrepresentations regarding his parole.

During his plea colloquy with the trial court, appellant testified that Sheffield had complied with all of his requests. Appellant also informed the court that he had requested that Sheffield be replaced as his counsel because he was upset and frightened and did not know what he should do with regard to the charges against him.

At the hearing on appellant's motion to withdraw his plea, Sheffield testified that he met with appellant several times prior to trial, and that although appellant wanted to meet with him every day before trial, he explained to appellant that was not advisable, since his time would be better spent preparing for trial. Sheffield did, however, give appellant his home telephone number and instructed appellant to telephone him collect whenever he felt the need to do so. Sheffield also testified that he reviewed materials from the District Attorney's Office — including witness lists, photographs of the crime scene, and appellant's statements — and discussed them with appellant. Sheffield stated that he prepared trial notebooks, and interviewed potential witnesses, whom he determined were unable to assist in appellant's defense. Finally, Sheffield informed the court that he had engaged in vigorous plea negotiations with the District Attorney, and had attempted to obtain an agreement that would have permitted appellant to enter guilty pleas to voluntary manslaughter charges, but that the best he could obtain was an offer for appellant to plead guilty to two murder charges, which he communicated to appellant and which appellant accepted.

Based upon this evidence of record, we agree with the trial court that Sheffield's representation of appellant was not deficient and did

not prejudice appellant at his guilty plea hearing.[5] The evidence indicates that if appellant honestly believed Sheffield was ill prepared for trial, he was mistaken in that belief. In reaching this conclusion, we note that at the plea hearing, appellant informed the trial court that his guilty pleas were entered voluntarily and were not the result of any promises or inducements. Furthermore, at the hearing on appellant's motion to withdraw his plea, Sheffield did not indicate he made any promises to appellant concerning parole, and in accepting the pleas, the trial court was authorized to discredit the veracity of appellant's claim that Sheffield had guaranteed he would be paroled after 14 years in prison.[6]

3. We conclude that appellant's guilty pleas were entered knowingly, intelligently, and voluntarily. In accepting the pleas, the trial court complied with all of the requirements of Uniform Superior Court Rule 33. The trial court engaged in a colloquy with appellant in which it was determined that appellant was not under the influence of any stimulants when he pled guilty; understood all of the charges against him; understood that pleas of guilty to the murder charges could result in a life sentence for each charge; did not enter his pleas as the result of threats, coercion or promises; understood that the prosecutor's recommended sentence was not binding on the court; and that he was free to proceed to trial by jury if he so wished; that if he did so, he would be accorded all the rights attendant to a fair trial, and would be appointed trial counsel to assist him if he was unable to retain counsel on his own. Also at the plea hearing, attorney Sheffield testified that he had discussed appellant's case with him, and had explained to appellant the consequences of pleading guilty to two charges of murder and that appellant understood his explanation.

Our review of the record shows nothing unacceptable regarding appellant's plea hearing, and we conclude that the trial court did not err in determining that appellant freely, knowingly, and intelligently entered his guilty pleas to two counts of murder.[7]

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 28, 2000 —
RECONSIDERATION DENIED MARCH 24, 2000.

*Kevin S. Cauley*, for appellant.
*J. Brown Moseley, District Attorney, Minerva S. Cansino, Assis-*

---

[5] See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Martin v. State*, 268 Ga. 584 (492 SE2d 223) (1997).

[6] See OCGA § 24-9-80.

[7] See *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969).

*tant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.*