318 Ga. 610
FINAL COPY

S23A0840. GREEN v. THE STATE.

PINSON, Justice.

Appellant Donald Berry Green entered a guilty plea for felony murder and aggravated assault in connection with the shooting death of Andre Winter.[1] The record shows that Green entered that plea of his own free choice, and that when he entered it, he was

_____

[1] The crimes occurred on February 12, 2000. On March 21, 2000, a Fulton County grand jury indicted Green for malice murder (Count 1), felony murder (Count 2), aggravated assault with a deadly weapon (Count 3), armed robbery (Count 4), and possession of a firearm during the commission of a felony (Count 5). On September 18, 2000, Green entered a negotiated guilty plea to Counts 2 and 3; Count 3 merged into Count 2, and Counts 1, 4, and 5 were dead-docketed. Green was sentenced to life for Count 2. In March 2010, Green began to file motions seeking an out-of-time appeal, and other relief. On November 3, 2021, the trial court held a hearing on Green's motion for out-of-time appeal, which it ultimately granted. Green filed his notice of appeal in December 2021.This Court issued an order dismissing that appeal under *Seals v. State*, 311 Ga. 739 (860 SE2d 419) (2021), because Green's criminal case was not final, as three counts of his indictment had been dead-docketed. See *Green v. State*, Case No. S22A0713 (Mar. 30, 2022) (explaining that "[u]pon remittitur, the case will return to the trial court, and [Green] will then have an opportunity to secure a final disposition that includes all counts of the indictment"). On April 4, 2023, the dead-docketed counts were nolle prossed and the trial court entered a final disposition leaving unchanged the sentence for the two counts to which Green initially pled guilty. On April 4, 2023, Green filed this appeal from the final judgment.

aware of the relevant circumstances and the likely consequences of pleading guilty, including the charges to which he was pleading, the various rights that he would waive by doing so, and the range of punishments to which he would be exposed.

Under any reasonable reading of United States Supreme Court precedent, that record gave the trial court an adequate basis for accepting Green's guilty plea as a matter of federal constitutional law, because the record as a whole showed that Green's plea was both voluntary and intelligent. But a line of our decisions over the past two decades would nonetheless call this plea into question because Green was not expressly advised on the record of one of three specific rights that were listed in *Boykin v. Alabama*, 395 U.S. 238 (89 SCt 1709, 23 LE2d 274) (1969), as examples of the rights someone waives when they enter a guilty plea. Under our line of decisions, accepting a guilty plea when the record does not specifically indicate that the defendant was informed that he was waiving all three of these "*Boykin* rights"—the right to a jury trial, the right to confront adverse witnesses, and the right to be protected from compelled self-

2

incrimination—is a violation of federal constitutional law that requires automatic reversal of the plea. The problem is that neither *Boykin* itself nor any Supreme Court decision that followed it even hints at that formalistic rule, and virtually every court across the country to have considered it—federal and state alike—has rejected that reading of Supreme Court precedent. In fact, in *Goodman v. Davis*, 249 Ga. 11, 12-13 (1) (287 SE2d 26) (1982), even *this Court* rejected that rule—a fact this Court failed to notice when we started applying this automatic-reversal rule in the years following *Goodman*.

Today, we correct course. After careful review of the relevant United States Supreme Court precedent, which binds our Court as to questions of federal law, we conclude that our decisions reversing a guilty plea because the record does not expressly indicate that the defendant was informed that he was waiving each of the so-called "*Boykin* rights" is in conflict with Supreme Court precedent and must be overruled. Our law thus returns to the standard outlined in *Goodman*, which follows Supreme Court precedent: a guilty plea is

valid as a matter of federal constitutional law if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances. Trial courts must continue to accept guilty pleas only with great care and discernment, following the procedures set out in our Uniform Superior Court Rule 33.8 and otherwise ensuring that the defendant entering a plea does so voluntarily and with awareness of the relevant circumstances and likely consequences. But the failure to specifically advise the defendant of his right against self-incrimination—or any of the three rights listed in *Boykin*—on the record does not require the reversal of a guilty plea as a matter of federal constitutional law if the record as a whole shows that the defendant's plea was voluntary and intelligent.

Under this corrected standard of federal constitutional law, Green's claim here fails because the record as a whole shows that Green's guilty plea was voluntary and intelligent. So we affirm Green's convictions.

I. *Background*

Green entered a guilty plea for felony murder and aggravated

4

assault in connection with the shooting death of Andre Winter. At Green's plea colloquy, the trial court informed Green of several of the rights he was waiving by pleading guilty:

> COURT: By pleading guilty, you give up the right to a jury trial on this case. You also give up the right to cross-examine any witnesses the State puts up. You would give up the right to challenge any evidence the State may put up. You also give up the right to present witnesses and evidence in your favor if you choose to do that. And finally you would have the right to testify if you choose to do that. You would also have a right to appeal a jury verdict if it came back guilty in this case. Do you understand by pleading guilty on these two counts only, you give up those rights?
> GREEN: Yes, I do.
> COURT: Your waiver is made intelligently and knowingly in this case?
> GREEN: Yes, it is.
> COURT: You understand the facts of the charges against you?
> GREEN: Yes, I do.

Green was sentenced to life in prison.

About ten years later, Green began to file motions seeking an out-of-time appeal and other relief. During a hearing on Green's motion for out-of-time-appeal, plea counsel testified about her discussions with Green before the plea. She did not specifically recall her

5

representation of Green, but she testified about her general practices with plea clients. Plea counsel testified that, among other things, she advises such clients of the rights they waive by pleading guilty. As plea counsel was naming the particular rights that she advises clients about, the State objected that this testimony was outside the scope of the hearing, since the hearing concerned whether Green had been made aware of his *appellate* rights. The trial court sustained the objection. That colloquy went as follows:

> Q: All right. Did you have a general practice in 2000 about what you would advise clients regarding a plea?
> A: Yes.
> Q: What would you advise them?
> A: That they give up their rights to trial. They give up their rights to confrontation. They give up –
> STATE: Your Honor, I would object to this testimony. It's sort of outside the scope of what the issue is before the Court. The issue . . . before [the] Court is whether [plea counsel] talked to Mr. Green about his appellate rights or made any efforts to discover what his wishes were with regards to those.
> COURT: Why don't we get to that point, please?

The hearing went on, and plea counsel never revisited the specific rights she discusses with her plea clients.

Plea counsel also submitted an affidavit in support of Green's

6

motion for out-of-time appeal. In the affidavit, plea counsel testified

substantially as she did at the hearing:

> My general practice has always been to discuss fully [with] each Defendant what the Plea offer is from the State: [i]f there is any type of Negotiated Plea and a non Negotiated Plea. I would also discuss the rights they give up by entering a Plea of course. I would discuss any defenses for the trial, the evidence, the witnesses, and any Motions. . . . In general I would advise what rights you give up by entering a Guilty Plea.

The trial court entered a final disposition leaving unchanged

the sentence for the two counts to which Green initially pled guilty

but dismissing the remaining charges.[2] Green never moved to with-

draw his guilty plea, see *Tyner v. State*, 289 Ga. 592, 594 (2) (714

SE2d 577) (2011) ("A defendant who hopes to appeal successfully

from a guilty plea is not required to first file a motion to withdraw

the plea." (cleaned up)), overruled on other grounds by *Lejeune v.*

*McLaughlin*, 296 Ga. 291 (766 SE2d 803) (2014) ("*Lejeune I*"), but

---

[2] The record also includes the trial court's order granting Green an out-of-time appeal. But that order is not part of this appeal because our decision in *Cook v. State*, 313 Ga. 471 (870 SE2d 758) (2022), eliminated the out-of-time appeal, and Green's conviction was not final at that time because some of the counts in his indictment had been dead-docketed, see *Seals*, 311 Ga. 739, so an appeal at that point would have been premature. Green's current appeal is timely from his final judgment of conviction.

timely filed this appeal from the final judgment.

II. *Analysis*

Pleading guilty to a crime is a "grave and solemn act." *Brady v. United States*, 397 U.S. 742, 748 (I) (90 SCt 1463, 25 LE2d 747) (1970). A guilty plea is not only the defendant's admission in open court that he committed the crimes he has been charged with, but also his consent to having a judgment of conviction entered against him without a trial—a waiver of his constitutional right to a jury trial and attendant constitutional protections. See id. In light of the guilty plea's nature and its consequences, as a matter of federal constitutional law the plea must be both voluntary (made of the defendant's own free choice) and intelligent (made with awareness of the relevant circumstances and likely consequences). See id. If it is not, the plea is obtained in violation of federal due process. See *McCarthy v. United States*, 394 U.S. 459, 466 (I) (89 SCt 1166, 22 LE2d 418) (1969).

In *Boykin*, the United States Supreme Court held that a court may not *presume* a guilty plea was voluntary and intelligent based

8

on a "silent record," 395 U.S. at 243. The next court term, the Court explained that *Boykin* had added a "requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Brady*, 397 U.S. at 747 (I) & n.4 (citing *Boykin*, 395 U.S. 238).

The vast majority of jurisdictions across the country have understood *Boykin* to impose only a procedural requirement: that a trial court accepting a guilty plea must ensure that the record, viewed as a whole, *shows* that the defendant's plea was voluntary and intelligent. In Georgia, however, *Boykin*'s procedural requirement has been transformed into a rigid and formalistic rule. Relying on language plucked from *Boykin*'s discussion of the rights that are waived when a defendant enters a guilty plea, this Court has required (at least in more recent cases) that either the trial court or at least defendant's counsel must recite on the record that the defendant was advised of three particular rights that he would be waiving by entering a guilty plea—the right to a jury trial, the right to con-

front witnesses against him, and the right against self-incrimination. And we have held that if any part of this requirement is not satisfied, the plea is automatically reversed. See, e.g., *Tyner*, 289 Ga. at 595 (4) (noting that Georgia courts have "interpreted advice and waiver of the 'three *Boykin* rights' as a strict constitutional requirement, with reversal the automatic consequence if any deviation is found to have occurred"); *Arnold v. Howerton*, 282 Ga. 66, 68 (646 SE2d 75) (2007), overruled on other grounds by *Lejeune I*, 296 Ga. 291 (reversing judgment of conviction based on guilty plea because "the record in this case fails to show that any comment by the trial court, or by Arnold's counsel, informed him that by pleading guilty he would waive his privilege against compulsory self-incrimination"). See also *Britt v. Smith*, 274 Ga. 611, 612 (556 SE2d 435) (2001) (framing the question whether a guilty plea is valid around whether the defendant was advised of the "three *Boykin* rights").

This Court's outlier reading of *Boykin* is the basis of Green's claim on appeal here. He contends that his guilty plea is invalid because the record does not expressly show that he was specifically

10

advised that he was waiving his right against compelled self-incrimination, which is one of the three "*Boykin* rights." The State responds that federal due process does not require an on-the-record recitation of all "three *Boykin* rights" if the record otherwise shows that the plea was voluntary and intelligent under the totality of the circumstances (as the State says it does here). To the extent our precedent says differently, the State asks us to reconsider it.

To address these arguments, we first review the relevant federal constitutional law of guilty pleas, focusing on the well-established standard that pleas must be voluntary and intelligent and *Boykin*'s requirement that the record must affirmatively show a voluntary and intelligent plea. We then canvass decisions of the United States Supreme Court, the federal courts of appeals, and state courts that have addressed *Boykin*'s role in the assessment of the validity of guilty pleas under federal constitutional law. We go on to compare the approach of those courts with our decisions in Georgia, and then we address whether we must reconsider our more recent decisions. Finally, we apply the resulting standard to this case.

11

A. *Federal Constitutional Law of Guilty Pleas*

1. *The Voluntary and Intelligent Standard*

The standard for whether a guilty plea satisfies constitutional due process is well established: guilty pleas are valid if they are "both 'voluntary' and 'intelligent.'" *Brady*, 397 U.S. at 747 (I). A voluntary and intelligent guilty plea is one that is made of the defendant's "own choice" "with sufficient awareness of the relevant circumstances and likely consequences." Id. at 748 (I). See also *Lejeune I*, 296 Ga. at 291-292 (1).[3] These "relevant circumstances and likely consequences" generally include the nature of the charge to which the defendant is admitting guilt, the factual basis of the charge, the punishment to which the plea will expose him, the terms of any negotiated agreement with the government, and the rights the defendant will waive by entering the plea. See, e.g., *Boykin*, 395 U.S. at 244 n.7; *Smith v. Magnuson*, 297 Ga. 210, 213 (1) (773 SE2d 205) (2015).

---

[3] In the decisions of both the United States Supreme Court and our Court, the terms "intelligent" and "knowing" are used in this context interchangeably (and sometimes collectively). They refer to the same concept: sufficient awareness of the circumstances and likely consequences that are important to the defendant's decision to enter a guilty plea.

12

## 2. Boykin's *Record Requirement*

Courts may not simply presume that a defendant's plea was voluntary and intelligent: the record has to show that it was. This was the lesson of *Boykin*, a case that involved a defendant in Alabama who was sentenced to death after he pleaded guilty to five counts of common-law robbery. See 395 U.S. at 239. Boykin entered that guilty plea just three days after he was appointed counsel (and a few weeks after he was indicted), and the record gave no indication that he was aware of any of the circumstances or potential consequences (including a death sentence) that would have been important to his decision to plead guilty: no pretrial motions or proceedings, and only a 55-word summary of the plea hearing, which did not show that the judge ever addressed Boykin (or that Boykin addressed the court) about his rights, the consequences of his plea, or anything else. See id. at 245 (I) & n.1 (Harlan, J., dissenting) (quoting the summary). On appeal, the United States Supreme Court reversed, holding that "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without

an affirmative showing that it was intelligent and voluntary." Id. at 242.

The *Boykin* Court's reasoning was brief and straightforward. The Court pointed out that it had recognized a similar record-making requirement when a defendant waives the Sixth Amendment right to counsel. There, it had held that "[p]resuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." Id. at 242 (quoting *Carnley v. Cochran*, 369 U.S. 506, 516 (82 SCt 884, 8 LE2d 70) (1962)). The Court reasoned that "the same standard must be applied to determining whether a guilty plea is voluntarily made," and then listed "[s]everal federal constitutional rights . . . involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial": the privilege against compelled self-incrimination, the right to a trial by jury, and the right to confront one's accusers. Id. at 242-243. So, echoing the language from its decision about the right to counsel, the Court reiterated that

14

"[w]e cannot presume a waiver of these three important federal rights from a silent record." Id. at 243.

The Court concluded by describing what an affirmative showing that a guilty plea was voluntary and intelligent would look like. Notably, that description was not a set of magic words or a list of specific rights to recite. Instead, the Court simply urged trial courts to make a record showing that the well-known constitutional standard was met. Given the stakes of a guilty plea, the Court said that it "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has *a full understanding of what the plea connotes and of its consequence*." *Boykin*, 395 U.S. at 243-244 (emphasis added).[4] And "[w]hen the

---

[4] In support of this approach, the Court cited a Pennsylvania Supreme Court decision that spoke in similarly general terms:

> "A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences."

Id. at 244 n.7 (quoting *Commonwealth ex rel. West v. Rundle*, 237 A2d 196, 197-198 (Pa. 1968)).

judge discharges that function, he leaves a record adequate for any review that may be later sought." Id. at 244.

In sum, fairly read, *Boykin* established a critical but modest record requirement for courts deciding whether to accept a guilty plea. To make sure that defendants understand the serious consequences of entering a guilty plea, evidence of that understanding must be apparent from the record. Absent a record that shows that the defendant's guilty plea was voluntary and intelligent, the judgment of conviction based on that plea must be reversed. *Boykin*, 395 U.S. at 243-244; *Brady*, 397 U.S. at 747 (I) & n.4.

3. *The National Consensus on* Boykin

After *Boykin*, decisions from across the country confirmed what that decision added—and did not add—to the standards for determining whether a guilty plea satisfies due process. These decisions—from the United States Supreme Court, lower federal courts, and state appellate courts alike—make clear that *Boykin* added a requirement that the record must affirmatively show that the defendant's guilty plea was voluntary and intelligent, but that it did

16

not change the substantive standard used to determine the constitutionality of a guilty plea. That standard was and remains whether the defendant's guilty plea was voluntary and intelligent (as those terms have long been understood), considering the totality of the circumstances. As long as the record shows that standard is satisfied, federal due process is satisfied, whether or not someone has expressly recited the three "*Boykin* rights" somewhere in that record.

(a) Start with the United States Supreme Court. In the court term after *Boykin* was decided, the Supreme Court told us in *Brady* what *Boykin* contributed to the assessment of the constitutionality of a guilty plea. The Court was clear that *Boykin* did not change the substantive standard for assessing the validity of a guilty plea as a matter of federal constitutional law, explaining "[t]he requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized." *Brady*, 397 U.S. at 747 (I) n.4. Instead, the Court explained that "[t]he new element added in *Boykin* was the requirement that *the record must affirmatively disclose* that a defendant who pleaded guilty entered his plea understandingly and

17

voluntarily." Id. (emphasis added). That explanation tracked the Court's statement in *North Carolina v. Alford* earlier that same term, when it said, citing *Boykin*, that the "test for determining the validity of guilty pleas . . . was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (91 SCt 160, 27 LE2d 162) (1970) (citing *Boykin*, 395 U.S. at 242; *Machibroda v. United States*, 368 U.S. 487, 493 (II) (82 SCt 510, 7 LE2d 473) (1962); *Kercheval v. United States*, 274 U.S. 220, 223 (47 SCt 582, 71 LE 1009) (1927)).

In neither *Brady* nor *Alford* did the Court suggest a new, special role in the plea procedures for the three constitutional rights the Court listed in *Boykin*. Indeed, neither *Brady* nor *Alford* even mentioned all three of these rights. Instead, in both cases, the Supreme Court evaluated the validity of the guilty plea in question by "considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749 (II). In *Alford*, the Court specially noted that the case presented "no issues of substance under *Boykin*" because "the

18

record in this case affirmatively indicate[d] that Alford was aware of the consequences of his plea of guilty and of the rights waived by the plea," without mentioning the three particular rights *Boykin* listed. 400 U.S. at 29 n.3. If *Boykin* were properly understood as requiring automatic reversal of a guilty plea if the record failed to show that the defendant was not advised that he was waiving all three "*Boykin* rights," one would think that the Court would have said so in these decisions. Yet neither these decisions nor any of the Court's later decisions addressing how to evaluate the validity of a guilty plea have even hinted at such a rule.

(b) In the years after *Boykin*, federal courts of appeals also addressed the question of just what that decision required a record to show to be able to conclude that a guilty plea was valid as a matter of federal constitutional law.[5] Every one of the courts that addressed this question arrived at the same answer: *Boykin* left unchanged the

---

[5] Although we are bound to follow only the decisions of the United States Supreme Court on questions of federal law, we often look to the decisions of other federal courts as persuasive authority. See *Lofton v. State*, 310 Ga. 770, 777 (2) n.6 (854 SE2d 690) (2021); *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (1) (458 SE2d 95) (1995).

totality-of-the-circumstances analysis used in determining whether a guilty plea was voluntary and intelligent, and it did not make an on-the-record recitation of the three rights it listed as a prerequisite to concluding that a guilty plea was constitutionally valid.

The former U.S. Court of Appeals for the Fifth Circuit,[6] for instance, was "aware of no precedent, from the Supreme Court or elsewhere, for the proposition that due process requires that a defendant be informed of each and every right which is waived by a guilty plea." *United States v. Frontero*, 452 F2d 406, 415 (III) (5th Cir. 1971). The court explained that a defendant's reliance on *Boykin* to support that proposition was "misplaced" because *Boykin* "involved a silent record," whereas the record in the defendant's case revealed "affirmative awareness of the 'consequences' of a guilty plea." Id. A few years later, that court held expressly that "there is no requirement that there be express articulation and waiver of the three constitutional

---

[6] See *Bonner v. City of Prichard*, 661 F2d 1206, 1207 (11th Cir. 1981) (explaining that the U.S. Court of Appeals for the Eleventh Circuit was established on October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act, and adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to that date).

rights referred to in *Boykin*, by the defendant at the time of acceptance of his guilty plea, if it appears from the record that the accused's plea was intelligently and voluntarily made, with knowledge of its consequences." *McChesney v. Henderson*, 482 F2d 1101, 1110 (5th Cir. 1973).

The Tenth Circuit reached the same conclusion. See *Stinson v. Turner*, 473 F2d 913, 915 (10th Cir. 1973). After reviewing *Boykin* and *Brady*, that court noted that *Boykin* "does expressly discuss the three enumerated constitutional rights," but it reasoned that "these rights were set out to demonstrate the gravity of the trial court's responsibility," not to impose a "procedural requirement . . . that they be enumerated." Id. *Boykin*, it held, "imposed only that requirement of an affirmative record showing of a voluntary and intelligent plea," its "purpose" being "'to make sure [the defendant] has full understanding of what the plea connotes and of its consequence.'" Id. (quoting *Boykin*, 395 U.S. at 244).

The other federal courts of appeals are in accord. Several more of those courts have expressly rejected the argument that *Boykin*

21

required that the record expressly show the defendant was advised about all three "*Boykin* rights" to avoid reversal of a guilty plea. See *United States v. Stewart*, 977 F2d 81, 84-85 (IV) (3d Cir. 1992) ("[T]he failure to specifically articulate the *Boykin* rights does not carry the day for the defendant if the circumstances otherwise establish the plea was constitutionally acceptable."); *Wade v. Coiner*, 468 F2d 1059, 1060-1061 (4th Cir. 1972) (rejecting the proposition that *Boykin* requires "that all of the several constitutional rights that are given up by entry of a guilty plea must be separately called to the attention of the accused"); *Pitts v. United States*, 763 F2d 197, 200 (6th Cir. 1985) ("The mere failure to advise a defendant of each right enumerated in *Boykin* does not automatically invalidate the plea."); *United States v. Henry*, 933 F2d 553, 560 (7th Cir. 1991) ("[W]hen a court advises the defendant that by pleading guilty he is waiving his rights to trial by jury and to confront the witnesses against him, 'a ritualistic question to a defendant asking if he understands that he is waiving his right against self-incrimination' is unnecessary."); *Todd v. Lockhart*, 490 F2d 626, 628 n.1 (8th Cir.

22

1974) ("[W]e agree that *Boykin* does not require the express articulation and waiver of these three rights at the time the plea is entered."); *Wilkins v. Erickson*, 505 F2d 761, 763 (I) (9th Cir. 1974) (relying on *Brady* and *Alford* to conclude that "*Boykin* does not require specific articulation of the [ ] three rights [mentioned in *Boykin*] in a state proceeding"); *United States v. Simmons*, 961 F2d 183, 187 (II) (B) (11th Cir. 1992) (noting that *Boykin* mentioned three specific rights, but explaining that the Eleventh Circuit "has construed *Boykin* to require only that courts establish a record that generally 'reveals affirmative awareness of the "consequences" of a guilty plea,'" and therefore "a trial court may sufficiently apprise a defendant of the consequences of his plea without obtaining express waivers of his right to confront adverse witnesses and his right against compulsory self-incrimination"). And even the handful of courts of appeals that have not rejected that argument in so many words have considered the totality of the circumstances to determine whether the record showed that the defendant's plea was voluntary and intelligent, rather than looking for the recitation of any specific

rights. See *United States v. Ward*, 518 F3d 75, 83-84 (IV) (1st Cir. 2008) (after reviewing *Boykin* and *Brady*, explaining, "[i]n deciding whether there is an affirmative showing of voluntariness in the state court record of [defendant's] plea, we examine the totality of the circumstances surrounding the plea"); *Hanson v. Phillips*, 442 F3d 789, 798 (II) (B) (2d Cir. 2006) ("The voluntariness of a guilty plea is reviewed by examining the totality of the relevant circumstances."); *Sanderlin v. United States*, 794 F2d 727, 734 (II) (D.C. Cir. 1986) (noting *Boykin*'s rule that a waiver of certain constitutional rights cannot be presumed "from a silent record" (punctuation omitted)). See also *United States v. Tursi*, 576 F2d 396, 399 (B) (1st Cir. 1978) ("[T]he failure of the court to mention defendant's right against self-incrimination does not rise to the level of prejudicial error.").

In short, we are aware of no decision of a federal appellate court adopting a rule that a guilty plea is subject to automatic reversal if the record does not expressly indicate that a defendant was specifically informed about each of the three "*Boykin* rights," and most of them have expressly rejected that reading of *Boykin*.

(c) A survey of the federal case law on the constitutionality of guilty pleas is not complete without a discussion of Rule 11 of the Federal Rules of Criminal Procedure. That rule, which, like other federal court rules, is reviewed (and revised as needed) by the United States Supreme Court,[7] has long governed plea procedures in federal courts. The rule's evolution after *Boykin*—and the decisions applying it—confirm yet again that *Boykin* does not require advising the defendant of specific rights on the record to avoid automatic reversal of a guilty plea.

Before *Boykin*, Rule 11 tracked the basic constitutional requirements for a valid plea. In 1966 (three years before *Boykin*), Rule 11 told district courts not to accept a guilty plea without addressing the defendant personally to determine whether the plea

---

[7] The Federal Rules of Criminal Procedure are promulgated (and amended) through an elaborate process beginning with drafts developed by an Advisory Committee of experts in criminal procedure from the judiciary, academia, and law practice. See Charles Alan Wright et al., 1 Fed. Prac. & Proc. Crim. § 2 Promulgation and Amendment of the Rules (5th ed. 2023). The drafts are then reviewed and may then be revised by the Standing Committee on Rules, which is similarly comprised, and then by the United States Supreme Court. See id. Under the Rules Enabling Act, Congress has the final authority to revise the proposed rule. See 28 USC §§ 2071-2077.

was made "voluntarily" with an understanding of its "consequences" and "the nature of the charge," and to ensure that there was a factual basis for the plea. See Charles Alan Wright et al., 1A Fed. Prac. & Proc. Crim. § 171 History of the Rule (5th ed. 2023) ("Wright & Miller"). See also *McCarthy*, 394 U.S. at 465-466 (I).[8] In *McCarthy*, the United States Supreme Court held that any violation of that earlier version of Rule 11 required reversal. See *McCarthy*, 394 U.S. at 471-472 (II). As the former Fifth Circuit explained, this was because when *McCarthy* was decided, all that Rule 11 "treated were the values lying at the heart of the rule's concerns: absence of coercion, understanding of the accusation, and knowledge of the direct consequences of the plea," so "a failure by the trial court to address any one or more of the rule's three core concerns as occurred in *McCarthy* require[d] automatic reversal." *United States v. Dayton*, 604 F2d 931, 939 (5th Cir. 1979) (en banc). And these "core concerns," of

---

[8] When the rule was first adopted in 1944, it simply instructed district courts that they should not accept a guilty plea "without first determining that the plea[ ] is made voluntarily with [an] understanding of the nature of the charge." Wright & Miller, supra, § 171 n.1.

course, were the same concerns animating the constitutional stand-ard. See, e.g., *Brady*, 397 U.S. at 747-748 (I) & n.4.

But in the wake of *Boykin*, the Rule's approach to ensuring the constitutionality of guilty pleas changed. In 1974 and 1975, major amendments were made to Rule 11 to give district courts clear and specific directions for the plea colloquy. Those amendments, which were "designed" to incorporate *Boykin*, instruct district courts to "inform the defendant of, and determine that the defendant understands," all kinds of information relevant to the plea, including the nature of the charges, the range of possible sentences, and a number of constitutional rights that are waived by entering a guilty plea. Fed. R. Crim. P. 11, Advisory Committee notes on 1974 and 1975 amendments; see also Wright & Miller, supra, § 171. The rights listed by the revised Rule 11 include not only the three rights *Boykin* listed—the right to a jury trial, to confront adverse witnesses, and to be protected from compelled self-incrimination—but many others, including the right to plead not guilty, to be represented by counsel, to testify, and to compel the attendance of witnesses. See Fed. R.

Crim. P. 11 (b) (1).[9] And Rule 11 has been amended several times

---

[9] Rule 11 (b) currently reads as follows, with the three constitutional rights referenced in *Boykin* italicized:

(1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

(C) *the right to a jury trial*;

(D) the right to be represented by counsel — and if necessary have the court appoint counsel — at trial and at every other stage of the proceeding;

(E) *the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination,* to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C.

since 1975 to add to this list other consequences of a guilty plea that may be of importance to determining whether it has been entered voluntarily and intelligently. See Wright & Miller, supra, § 171 & n.6 (describing the history of Rule 11's amendment including the addition of new subsections to Rule 11 (b) including, for example, a requirement that courts notify defendants of the terms of a plea-agreement provision waiving the right to appeal or collaterally attack the sentence, see Rule 11 (b) (1) (N), and advise defendants that if convicted, a defendant who is not a United States citizen may be

---

§ 3553 (a);

    (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

    (O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

(2) Ensuring That a Plea Is Voluntary. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

(3) Determining the Factual Basis for a Plea. Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

removed from the United States, denied citizenship, and denied admission to the United States in the future, see Rule 11 (b) (1) (O)).

Here is what matters most about this post-*Boykin* Rule 11 for our purposes: it is now well settled that a district court's failure to comply with any particular piece of Rule 11's plea procedures does not necessarily require reversal. Instead, after federal courts had reached different answers about the remedy for a Rule 11 violation, Rule 11 was amended to clarify that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11 (h).[10]

By its terms, this harmless-error provision applies to all violations of Rule 11—which include, of course, the failure to list one of

---

[10] With respect to this amendment, the Advisory Committee explained, "[a]n inevitable consequence of the 1975 amendments [that codified *Boykin*] was some increase in the risk that a trial judge, in a particular case, might inadvertently deviate to some degree from the procedure which a very literal reading of Rule 11 would appear to require." Fed. R. Crim. P. 11, Advisory Committee notes on 1983 amendments. The Advisory Committee went on: "'[D]istrict courts are required to act in substantial compliance with [the rule],'" but "'ritualistic compliance is not required,'" and "even when it may be concluded Rule 11 has not been complied with in all respects, it does not inevitably follow that the defendant's plea of guilty or nolo contendere is invalid and subject to being overturned by any remedial device then available to the defendant." Id.

the three "*Boykin* rights." That understanding finds support in at least three Supreme Court decisions issued since the harmless-error standard was added. See *United States v. Davila*, 569 U.S. 597, 609 (III) (133 SCt 2139, 186 LE2d 139) (2013) ("Errors or omissions in following Rule 11's plea-colloquy instructions . . . are properly typed procedural, and are therefore properly assessed under the harmless-error instruction of Rule 11 (h)."); *United States v. Vonn*, 535 U.S. 55, 60 (I), 70 (II) (B) (122 SCt 1043, 152 LE2d 90) (2002) (addressing an alleged violation of what is now Rule 11 (b) (1) (D), involving the failure to advise the defendant of his right to counsel if he went to trial and noting that "by 1983 the practice of automatic reversal for error threatening little prejudice to a defendant or disgrace to the legal system prompted further revision of Rule 11 [to add subsection (h)]"); *United States v. Dominguez Benitez*, 542 U.S. 74, 76-78 (I), 80 (II) (A), 81 (II) (B) & n.6 (124 SCt 2333, 159 LE2d 157) (2004) (explaining that "[i]t is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the

31

proceeding," and that "[t]he omission of a single Rule 11 warning without more is not colorably structural"); id. at 84 (II) (C) n.10 (distinguishing the automatic reversal result in *Boykin* as involving the situation "when the record of a criminal conviction obtained by guilty plea contains *no evidence* that a defendant knew of the rights he was putatively waiving" (emphasis added)).

And the federal courts of appeals that have addressed the issue have explicitly applied Rule 11 (h)'s harmless-error standard to the failure to advise the defendant on the record that a guilty plea would waive one of the "*Boykin* rights." See, e.g., *United States v. Johnson*, 1 F3d 296, 298 (5th Cir. 1993) ("[N]o failure in the plea colloquy—regardless of whether it might be one of omission or commission, total or partial, core or non-core—will mandate an automatic reversal of a conviction and vacatur of a sentence. Rather, reversal and vacatur will be required when—but only when—the challenged 'variance from the procedures required by Rule 11 affects substantial rights' of the defendant." (citation omitted)); *United States v. Gomez-Cuevas*, 917 F2d 1521, 1525 (10th Cir. 1990) ("The failure to advise

32

a criminal defendant of his right to confront and cross-examine witnesses is harmless error when the guilty plea is voluntary and the defendant understands the nature of the charges against him."); *United States v. Stead*, 746 F2d 355, 356-357 (6th Cir. 1984) (holding that the district court's failure to advise the defendant of his right against self-incrimination and his right to confront and cross-examine witnesses did not "preclude a finding that [the defendant] voluntarily and intelligently entered his guilty plea" and concluding that "the district court's omission constitutes harmless error").

Rule 11 and its harmless-error provision apply only to federal courts, but they offer compelling evidence about *Boykin*'s scope. *Boykin* is a central focus of the plea procedures set out in Rule 11, which are put in place to ensure that guilty pleas are valid as a matter of federal constitutional law, and Rule 11 cannot provide *less* protection to defendants than the Constitution provides. See Fed. R. Crim. P. 11, Advisory Committee notes on 1974 Amendments ("The amendment identifies more specifically what must be explained to the defendant and also codifies, in the rule, the requirements

33

of *Boykin* . . . , which held that a defendant must be apprised of the fact that he relinquishes certain constitutional rights by pleading guilty."). See also *Davila*, 569 U.S. at 609 (III) ("The advice and questions now specified in Rules 11 (b) and 11 (c) (3) (B), Davila observes, are designed to ensure that a defendant's plea is fully informed and intelligently made."). If *Boykin* required automatic reversal of a guilty plea as a matter of federal constitutional law any time the defendant is not advised on the record that he is waiving one of the three "*Boykin* rights," Rule 11 would have to require reversal as well. Yet Rule 11—a rule that is put in place and amended only after review by the United States Supreme Court and Congress, among others—*excuses* the failure to recite one of the "*Boykin* rights" if it is harmless error. That approach to the "*Boykin* rights" gives us another sign that *Boykin* did not carve out the three rights it listed for special constitutional treatment.

*

In sum, every data point from federal law tells us that the "ritual of the colloquy," including the articulation of the rights being

waived by entering a guilty plea, "is but a means toward determining whether the plea was voluntary and knowing." *Stewart*, 977 F2d at 84 (IV). Going through those procedures "furnishes strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences." Id. But "the failure to specifically articulate the *Boykin* rights does not carry the day for the defendant if the circumstances otherwise establish the plea was constitutionally acceptable." Id. at 85 (IV).

(d) State appellate courts applying the federal constitutional law to guilty pleas are almost universally in accord with the federal case law just discussed. The Tennessee Court of Criminal Appeals, for example, has explained that "*Boykin* simply requires that the transcript of a guilty plea proceeding affirmatively show that the defendant voluntarily and understandingly entered his plea of guilty." *Clark v. State*, 800 SW2d 500, 504 (Tenn. Crim. App. 1990) (punctuation omitted). The court agreed that no "precise litany" or "catechism of the constitutional rights that are waived by entry of a

guilty plea" is "compelled by *Boykin* or the Constitution," and it noted that federal courts of appeals had "held that the failure of a trial judge to articulate a right mentioned in *Boykin does not*, as a matter of law, render a judgment constitutionally infirm." Id. (punctuation omitted). Many other states have reached the same conclusion on similar reasoning. See, e.g., *State v. Smith*, 167 S3d 736, 740 (La. Ct. App. 2014) ("We find that in the context of all the advice given, the trial court's failure to mention specifically the privilege protecting a defendant from compelled self-incrimination at trial cannot support a finding that defendant entered each of his guilty pleas without a full understanding of what the plea connotes and of its consequences. . . . [W]e think the extensive colloquy conducted by the trial court resulted in a knowing and voluntary plea by defendant."); *Lacy v. People*, 775 P2d 1, 5 (II) (A) (1) (Colo. 1989) ("[D]ue process does not require a specific waiver of even the three constitutional rights highlighted in *Boykin*."); *Barrett v. State*, 544 P2d 830, 834 (II) (Alaska 1975), on rehearing, 546 P2d 161 (Alaska 1976)

("What matters is whether from the totality of circumstances sur-rounding the plea it can be determined that the plea was voluntarily and intelligently made."). See also *Oleson v. Young*, 869 NW2d 452, 455-459 (S.D. 2015) (leaving open the question of whether a "'complete absence' of any *Boykin* waiver" should result in automatic reversal but holding that "'specific articulation of the *Boykin* rights by the trial judge is not an indispensable requisite for the record to establish a valid plea.' . . . To determine whether a guilty plea is voluntary and knowing 'as required to satisfy due process require-ments, we must look to the "totality of the circumstances"'" (citations omitted)). See generally Wayne R. LaFave et al., Criminal Proce-dure, § 21.4 (e) (4th ed. updated Dec. 2023) (explaining that "most courts, often stressing the uniqueness of *Boykin*," have held that *Boykin* does not "mean that a guilty plea is constitutionally defective whenever the judge failed to articulate specifically the constitutional rights listed in [ ] *Boykin*").

In the years shortly after *Boykin*, a couple of states did read *Boykin* to require an on-the-record recitation of the three "*Boykin*

37

rights," but that view didn't stick.

One of those states was California. Five months after *Boykin*, "before a substantial body of federal law on the point had developed," *People v. Howard*, 824 P2d 1315, 1340 (II) (H) (Cal. 1992), the California Supreme Court read it to require that "each of the three rights mentioned—self-incrimination, confrontation, and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea." *In re Tahl*, 460 P2d 449, 456 (III) (Cal. 1969). See also *In re Yurko*, 519 P2d 561 (Cal. 1974). But by 1992, citing "the overwhelming weight of authority" in conflict with that view of *Boykin*, the court saw "no choice but to revisit [its] prior holdings." *Howard*, 824 P2d at 1339 (II) (H). Acknowledging that "[t]he question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards," that court held that under the governing federal test, "a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances." Id. (citing *Alford*, 400 U.S. at 31 and *Brady*, 397 U.S. at 747-748 (I)).

The court explained its change of heart:

> In the 22 years since *Tahl*, our interpretation of federal law in that opinion has not garnered significant support in the federal courts. Indeed, the high court has never read *Boykin* as requiring explicit admonitions on each of the three constitutional rights. Instead, the court has said that the standard for determining the validity of a guilty plea "was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." [quoting *Alford* and citing *Brady*]. "The new element added in *Boykin*" was not a requirement of explicit admonitions and waivers but rather "the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." [quoting *Brady*].
>
> While the high court has never accepted our interpretation of *Boykin*, the federal appellate courts have expressly rejected it. Consequently, the weight of authority today makes it abundantly clear that "the California interpretation of *Boykin* announced in *Tahl* is not required by the federal Constitution . . . ." "*Boykin* does not require specific articulation of each of the three rights waived by the guilty plea, as long as it is clear from the record that the plea was voluntary and intelligent . . . ." There is wide agreement both on this point and on the applicable test: The record must affirmatively demonstrate that the plea was voluntary and intelligent under the totality of the circumstances. Because the effectiveness of a waiver of federal constitutional rights is governed by federal standards we adopt the federal test in place of the rule that the absence of express admonitions and waivers requires reversal regardless of prejudice.

Id. at 1341-1342 (II) (H) (citations omitted).

California was not alone in abandoning the "three *Boykin* rights"-focused, automatic-reversal interpretation of *Boykin*. The Louisiana Supreme Court also adopted a "three-right rule" shortly after *Boykin*, but it, too, has since acknowledged that the rule "was not constitutionally required" and "reflected a minority view" because "a majority of state decisions required 'only that the trial judge canvass the matter with the defendant to verify that the plea is freely and understandingly made.'" *State v. Balsano*, 11 S3d 475, 477 (La. 2009). That court held on collateral review that the "trial court's failure to mention specifically . . . the privilege protecting a defendant from compelled self-incrimination at trial . . . cannot support a finding that defendant entered each of his guilty pleas without 'a full understanding of what the plea connotes and of its consequences.'" Id. at 483 (quoting *Boykin*, 395 U.S. at 244).

As far as we can tell, of all the other jurisdictions across our country, only Michigan still clearly applies a rule that requires automatic reversal of a guilty plea as a matter of federal constitutional

law if any one of the three *"Boykin* rights" are not recited on the record. See *People v. Jaworski*, 194 NW2d 868, 872 (I), 872-873 (IV) (Mich. 1972). And even that rule, which was announced in a divided opinion issued soon after *Boykin*, has been limited to claims raised on direct rather than collateral review. See *People v. Ingram*, 484 NW2d 241, 246-247 (II) (Mich. 1992).

B. *Georgia's Misapplication of* Boykin

And then there is Georgia. For almost three decades after *Boykin*, our Court took the same, totality-of-the-circumstances approach to constitutional challenges to guilty pleas as the courts across the country that we have just canvassed. But then, without explanation, and in conflict with our own precedent, we gradually elevated the United States Supreme Court's advice about the three rights listed in *Boykin* to constitutional prerequisites for a valid guilty plea and began to automatically reverse guilty pleas if those rights were not recited on the record.

1. For many years after *Boykin*, our Court evaluated constitutional challenges to guilty pleas like most other courts did: we looked

41

at the full record and asked whether the defendant's guilty plea was voluntary and intelligent based on the totality of the circumstances, with no particular focus on whether the three "*Boykin* rights" had been explicitly conveyed to the defendant. See, e.g., *Thomason v. Caldwell*, 229 Ga. 637, 642-643 (194 SE2d 112) (1972) (concluding that plea was voluntary and understanding and noting that the petitioner had been advised of many rights, including his right to a jury trial, but not mentioning the other two *Boykin* rights). See also *McCrary v. Ricketts*, 232 Ga. 890, 891 (209 SE2d 148) (1974); *Mason v. Balcom*, 230 Ga. 838, 838 (199 SE2d 313) (1973); *Wyatt v. Caldwell*, 229 Ga. 597, 597 (1) (193 SE2d 607) (1972).

In fact, 15 years after *Boykin*, our Court was presented with the question whether the failure of the trial court to advise the defendant of one of those "*Boykin* rights" on the record required automatic reversal of his guilty plea. We squarely rejected that view of *Boykin* in a unanimous and well-reasoned opinion. In *Goodman v. Davis*, the trial court held a plea hearing in which the court questioned Goodman "at some length" to make sure he understood the

charges against him and the consequences of pleading guilty, whether he was entering his plea freely, and whether there was a factual basis for the plea, and the court "advised Goodman of his rights to trial by jury and to confront the witnesses against him." 249 Ga. at 12. In a petition for habeas corpus, Goodman argued that his plea was invalid because he was not specifically advised of the right against self-incrimination. See id. We rejected that argument, and in doing so, articulated an understanding of *Boykin* that was in line with United States Supreme Court precedent and the national consensus. We explained:

> we read *Boykin* as requiring that there be a record of the guilty plea hearing adequate for the reviewing court to determine whether (1) the defendant has freely and voluntarily entered the plea with (2) an understanding of the nature of the charges against him and (3) an understanding of the consequences of his plea.

Id. at 13 (1). And we "decline[d] to adopt a rule which would demand that failure to advise an accused of his right against self-incrimination invalidates a guilty plea in a case where the record reflects that the central considerations of *Boykin* have otherwise been met," relying in part on persuasive federal case law addressing *Boykin* and

Rule 11. See id. at 14 (1) & n.2. Applying that understanding of *Boykin* to the case then before us, we noted that the "record . . . show[ed] that Goodman understood the nature of the charges against him and the consequences of his guilty plea and that the plea was not induced by coercion, but was voluntarily entered," and we were "satisfied from our study of the record that Goodman comprehended the significance of the constitutional rights he was waiving." Id. at 14 (1).

After *Goodman*, we continued with this approach for a number of years. See, e.g., *Haggins v. State*, 259 Ga. 188, 189 (380 SE2d 711) (1989) ("We have reviewed the record of the guilty pleas and find that at the time Haggins' pleas were accepted he was cognizant of all the rights that he was waiving, and of the possible consequences of his voluntary pleas of guilty." (citing *Boykin*, 395 U.S. at 238)); *Shaw v. State*, 258 Ga. 719, 719-720 (373 SE2d 628) (1988) ("The requirements of *Boykin* that the record reflect that defendant entered the plea voluntarily and with understanding were met by the

44

trial court's examination of the appellant. . . . Under all the circumstances, we find that the record reflects a voluntary plea of guilty to murder given with knowledge of the rights relinquished." (citation omitted)); *Carroll v. Holt*, 251 Ga. 144, 144-145 (304 SE2d 60) (1983) ("A review of the record reveals that Carroll was interrogated concerning whether he understood the nature of the charge and that he had no questions concerning the crime. The procedure conducted in this case meets the requirements set forth in *Boykin*."). Several of our decisions cited *Goodman* for the proposition that *Boykin* requires only that the record show "(1) the defendant has freely and voluntarily entered the plea with (2) an understanding of the nature of the charges against him and (3) an understanding of the consequences of his plea." *King v. State*, 270 Ga. 367, 369 (1) (509 SE2d 32) (1998) (quoting *Goodman*, 249 Ga. at 13 (1)). See also *McDaniel v. State*, 271 Ga. 552, 554 (2) (522 SE2d 648) (1999); *Cazanas v. State*, 270 Ga. 130, 134-135 (508 SE2d 412) (1998) (Sears, J., concurring); *Green v. State*, 265 Ga. 263, 263 (1) (454 SE2d 466) (1995); *Price v. State*, 259 Ga. 834, 835 (388 SE2d 857) (1990).

2. But gradually, our Court wandered away from *Goodman*'s approach to *Boykin* and the national consensus that *Goodman* was aligned with. We took the first step off course about 14 years after *Goodman*, and it appears to have been entirely unintentional and driven by a case with unusual facts. In *Bowers v. Moore*,[11] the defendant, who was found in his habeas proceeding to have an IQ of 60, separately pleaded guilty to two aggravated assaults. 266 Ga. 893, 893-894 (471 SE2d 869) (1996). In his first plea, he was not informed of his right to confront adverse witnesses or his privilege against self-incrimination, while the second plea was riddled with omissions: he was not informed of these rights or told about the presumption of innocence or minimum and maximum penalties for the crime to which he was pleading guilty, the State did not submit a factual basis for his plea, and the judge did not ask if Moore was

---

[11] The holdings in *Bowers v. Moore* and many of the other cases discussed below that the State bears the burden of proving that a guilty plea was voluntary and intelligent on habeas corpus review were overruled in *Lejeune I*, 296 Ga. at 299 (2). That subsequent history is omitted from the citations to those cases.

under the influence or if he had been coerced. Id. Yet the Court concluded that the pleas were invalid simply because "Moore was not advised of his constitutional rights—specifically his right to confront witnesses and privilege against self-incrimination." Id. at 895 (2). The Court offered this basis for reversal without citing *Goodman*. In hindsight, the reversal in *Bowers* is better grounded in the multiple deficiencies of the plea procedures and the surrounding circumstances, including Moore's apparent intellectual disability, which made the omissions rather obviously harmful.

A few years after *Bowers*, our Court struck off fully in the wrong direction. In *Nash v. State*, 271 Ga. 281, 281, 284-285 (519 SE2d 893) (1999), three full decades after *Boykin*, we mentioned the "three *Boykin* rights" for the first time—quoting a Louisiana case that used that phrase—in a case holding that under certain circumstances, the burden shifts to a recidivist defendant in non-death penalty cases to prove that an earlier guilty plea was not voluntarily and intelligently entered. *Nash*, 271 Ga. at 285 (quoting *State v.*

47

*Shelton*, 621 S2d 769, 779-780 (La. 1993)).[12] Two years later, in *Britt v. Smith*, we cited *Nash* for the assertion that "our decisions dealing with the validity of a guilty plea are generally couched in terms of the defendant's waiver of the three *Boykin* rights." 274 Ga. at 614. Of course, that assertion was not accurate: we cited only *Nash* in support, and *Nash* was the first and only time we had actually "couched" the issue in those terms. But that sentence was all it took: with the "three *Boykin* rights" as a brand-new touchstone, we then rejected Britt's argument that the trial court's failure to inform the defendant of *other* constitutional rights (to the presumption of innocence, the assistance of counsel, and to subpoena witnesses) might invalidate the defendant's guilty plea—because those other rights were not "*Boykin* rights." See id. at 611, 615; see also id. at 616 (Sears, P. J., dissenting) (noting the other constitutional rights Britt argued he was not told about).

---

[12] Notably, two years later, in a case holding that a defendant does not need to give a verbal response to sufficiently waive his "*Boykin* rights," the Court disavowed *Nash*'s adoption of Louisiana's requirement that "a guilty plea must be made 'with an articulated waiver of the three *Boykin* rights.'" See *Motley v. State*, 273 Ga. 732, 734 n.3 (546 SE2d 468) (2001) (emphasis omitted).

With *Britt*, then, our Court left in the dust our decisions calling for a totality-of-the-circumstances review of whether a guilty plea was voluntary and intelligent and thus valid as a matter of federal constitutional law. In its place, we adopted an arbitrary and inflexible rule focused only on whether the defendant was advised of and had waived, on the record, the three constitutional rights mentioned in *Boykin*. And this analytical shift happened without any explanation at all, much less any express analysis of *Boykin*, or *Goodman*, or the extensive jurisprudence interpreting and applying *Boykin* in this and many other courts.

That shift was not a clean break. A few decisions continued to consider all of the circumstances in deciding whether a guilty plea was voluntary and intelligent. See, e.g., *Romano v. State*, 272 Ga. 238, 241 (3) (527 SE2d 184) (2000) ("Our review of the record shows nothing unacceptable regarding appellant's plea hearing, and we conclude that the trial court did not err in determining that appellant freely, knowingly, and intelligently entered his guilty pleas to two counts of murder." (citing *Boykin*, 395 U.S. at 238)); *Harrell v.*

*State*, 275 Ga. 519, 520-521 (2) (570 SE2d 315) (2002); *Moore v. State*, 285 Ga. 855, 856-858 (1) (684 SE2d 605) (2009). But other decisions picked up on *Britt* and simply accepted it as a correct statement of the law, with no further scrutiny. See, e.g., *State v. Cooper*, 281 Ga. 63, 64-67 (1)-(2) (636 SE2d 493) (2006). And that second set of decisions snowballed into our current approach: determining the constitutionality of a guilty plea based only on whether the record expressly shows that the defendant was specifically advised that he was waiving the "three *Boykin* rights," and automatically reversing the plea when even one of those rights is not mentioned on the record. See, e.g., *Wilson v. Kemp*, 288 Ga. 779, 779-780 (727 SE2d 90) (2011) (reversing denial of habeas petition where plea hearing record showed limited discussion of the defendant's right to remain silent at the guilty plea hearing without explaining that defendant would have that right at trial); *Sutton v. Sanders*, 283 Ga. 28, 28-29 (656 SE2d 796) (2008) (reversing denial of habeas petition because plea hearing record did not expressly indicate that the defendant was advised of his right to a jury trial); *Arnold*, 282 Ga. at 67-68

50

(reversing denial of habeas petition because record did not expressly indicate the defendant was advised of his privilege against compulsory self-incrimination); *Hawes v. State*, 281 Ga. 822, 825 (642 SE2d 92) (2007) (reversing denial of habeas petition because trial court's informing defendant of his right to testify if he "so desired" failed to notify the defendant specifically about his "right . . . not to testify during the plea proceeding that he committed the acts charged in the indictment").

None of these decisions applying this new approach to *Boykin* even mentioned *Goodman* or our stark departure from the national consensus on *Boykin*. We first identified (but did not resolve) the conflict between *Goodman* and our more recent precedent in *Tyner*, noting that "[i]t is not entirely clear how this Court got from *Goodman* to *Wilson*," and that "*Goodman* remains on the books" and is "plainly inconsistent with our more recent precedent." 289 Ga. at 595-596 (4). That conflict was flagged a second time in a dissenting opinion in *Lejeune v. McLaughlin*, 299 Ga. 546, 548 (789 SE2d 191)

(2016) ("*Lejeune II*") (Nahmias, J., dissenting). But the conflict remains unresolved.

C. *Reconsidering Georgia's Outlier Approach to* Boykin

The State now asks us to reconsider our decisions that require automatic reversal of a guilty plea if one of the so-called "*Boykin* rights" is not recited on the record. The State contends that as a matter of federal law, the question is simply whether the record, viewed as a whole, shows that the guilty plea in question was voluntary and intelligent under the totality of the circumstances. In other words, the State asks us to return to the approach that we adopted in our reasoned decision in *Goodman*, which is consistent with the approach to *Boykin* and the evaluation of guilty pleas generally that is followed by virtually every other court across the country.

Unlike many decisions to reconsider our precedent, this course correction is one we have no choice but to make. Requests to reconsider our own past decisions typically face the high bar of stare decisis. See, e.g., *Johnson v. State*, 315 Ga. 876, 887 (3) (885 SE2d 725) (2023). On questions of federal law, however, our Court is bound by

holdings of the United States Supreme Court. See, e.g., *Nordahl v. State*, 306 Ga. 15, 20 (1) (829 SE2d 99) (2019); *Marchman v. Marchman*, 198 Ga. 739, 742 (32 SE2d 790) (1945). So if one of our decisions on a question of federal law conflicts with Supreme Court precedent, the high court's precedent controls, and our contrary decision must be overruled. See *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 531 (132 SCt 1201, 182 LE2d 42) (2012) (per curiam) ("When this Court has fulfilled its duty to interpret federal law, a state court may not contradict or fail to implement the rule so established."); *Chesapeake & Ohio Ry. Co. v. Martin*, 283 U.S. 209, 221 (51 SCt 453, 75 LE 983) (1931) ("The determination by this court of [a federal] question is binding upon the state courts and must be followed, any state law, decision, or rule to the contrary notwithstanding."). In other words, "even the venerable doctrine of stare decisis does not permit us to persist in an error of *federal* constitutional law." *Lejeune I*, 296 Ga. at 298 (2).[13]

---

[13] This is so whether our decision interpreting federal law is more or less protective of a right than the United States Supreme Court's precedent. A

These principles apply to our decisions that have narrowed the question whether a guilty plea is constitutionally valid into a record search for the three "*Boykin* rights." Some of those decisions reject challenges to guilty pleas merely because the three "*Boykin* rights" show up in the record, without considering whether other deficiencies in the plea hearing render a guilty plea invalid. See, e.g., *Britt*, 274 Ga. at 611, 615; *Cooper*, 281 Ga. at 64 (1) ("Whether the trial court establishes on the record a factual basis for the guilty plea does not enter into the determination of the constitutional validity of the plea under *Boykin*. As the habeas court itself recognized, that requirement is only imposed on the trial court pursuant to Uniform Superior Court Rule (USCR) 33.9."). Others—the ones Green would

---

State is free to provide greater or lesser protection of a right *as a matter of state law*, but we do not have that freedom as a matter of federal constitutional law, at least when the Supreme Court has "specifically refrain[ed]" from doing so. *Oregon v. Hass*, 420 U.S. 714, 719 (II) (1) (95 SCt 1215, 43 LE2d 570) (1975) (explaining that "a State is free *as a matter of its own law* to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards. . . . But, of course, a State may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them.").

have us rely on here—require reversal of guilty pleas merely because one of those rights was not recited on the record. *Sutton*, 283 Ga. at 28-29; *Arnold*, 282 Ga. at 67-68; *Hawes*, 281 Ga. at 825. Both kinds of decisions share the same unsupported premise: that finding a recitation of the "*Boykin* rights" on the record is both necessary and sufficient to concluding that a guilty plea is valid as a matter of federal constitutional law. As we have explained at length, this premise finds no meaningful support in *Boykin* or any other United States Supreme Court precedent.

The Supreme Court has not said expressly that our outlier rule—that a record that does not expressly indicate that the defendant was specifically informed about all three "*Boykin* rights" requires automatic reversal of a guilty plea—is wrong. But that rule is such a clear misreading of Supreme Court precedent that we are required to overrule it. That rule is not reasonably extracted from *Boykin* itself—particularly now that the Supreme Court has described *Boykin* as adding only "that the record must affirmatively

disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily," *Brady*, 397 U.S. at 747 (I) n.4, with no hint then or since that the three "*Boykin* rights" have any outsized importance in the assessment of a guilty plea's validity. And although the national consensus we described above is only persuasive authority, it is quite persuasive. The near-universal rejection of our rule across the country in cases applying *Boykin* bolsters the case that our automatic-reversal rule simply cannot be reconciled with the Supreme Court's precedent. Finally, it is telling that at least two state courts that once applied a "*Boykin* rights"-focused automatic-reversal rule like ours—California and Louisiana—have each since concluded that the overwhelming weight of authority *required* them to abandon that rule in favor of the consensus federal standard, without addressing stare decisis. See *Howard*, 824 P2d at 1341-1342 (II) (H) & n.18 (explaining that the federal courts of appeals "have expressly rejected" the rule that *Boykin* requires a specific recitation of the three rights mentioned and collecting cases); *Balsano*, 11 S3d

56

at 477 (acknowledging that Louisiana's "three-right rule . . . reflected a minority view" and "was not constitutionally required").

All of that said, stare decisis likely would not require us to preserve our "three *Boykin* rights" approach to guilty pleas in any event. As we have just recounted, that approach was not a result of reasoned decision making. And our decisions that started that approach are not just unreasoned, but an unreasoned *departure* from our own earlier decisions—in particular, *Goodman*, which was, by contrast, thoroughly reasoned and well-grounded in United States Supreme Court precedent. Compare *Britt*, 274 Ga. at 612 (citing *Nash*, 271 Ga. at 285, for the proposition that the State's "only burden" was to prove the defendant's "articulated waiver of the three *Boykin* rights") with *Goodman*, 249 Ga. at 13-15 (I) & n.2 (discussing *Boykin*, our own prior precedent, and *Boykin* decisions from the federal courts of appeals (citing *State v. Germany*, 245 Ga. 326, 328 (265 SE2d 13) (1980); *Andrews v. State*, 237 Ga. 66, 67 (1) & n.1 (226

SE2d 597) (1976))).[14] Nor are there any reliance interests to speak of. Compare *Olevik v. State*, 302 Ga. 228, 245 (2) (c) (iv) (806 SE2d 505) (2017) (explaining that reliance interests are an "important consideration for precedents involving contract and property rights" because "parties may have acted in conformance with existing legal rules in order to conduct transactions" (punctuation omitted)). Even if we had a choice between continuing to follow such a rule and returning to the consensus understanding of *Boykin*, stare decisis likely would not require us to push farther down the wrong path. See *Johnson*, 315 Ga. at 887-888 (3) (overruling decision that was "not only wrong but obviously so; unreasoned (bordering on accidental); in conflict with our own decisions; and . . . work[ed] genuine

---

[14] We generally presume that a later decision that conflicts with an earlier decision has tacitly overruled the earlier decision. *Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 62-63 (III) (C) (885 SE2d 671) (2023) (declining to follow earlier decision where later decision that conflicted properly recited and applied a "bedrock principle"). But when that tacit overruling was not only unnoticed by the Court that did it but also unreasoned, as in *Nash* and *Britt*, stare decisis arguably applies to the new decision with less force. See *Ammons v. State*, 315 Ga. 149, 171-172 (1) (880 SE2d 544) (2022) (Pinson, J., concurring) ("If the past decision in question is unreasoned, or if it disregards the basic legal principles that courts use to do law, the argument for overruling is easier to make.").

harm to important review rights of . . . criminal defendants").[15]

In short, our decisions reversing a guilty plea merely because the record does not show that the defendant was expressly apprised of all three of the so-called "*Boykin* rights" are overruled.[16]

With these decisions cleared away, our law finds its way back

---

[15] When asked to reconsider our past decisions, this Court has "typically" considered a list of factors that include the "soundness" of the precedent's reasoning, its "age," its "workability," and the "reliance interests at stake." *Johnson*, 315 Ga. at 888 (3). "This list of factors has never purported to be exclusive, and several of us have expressed concerns with those factors, or at least with how they are usually applied." Id. at 888-889 (3) (cleaned up). This case is a good example of one for which at least some of these factors would seem a poor fit. For instance, how are we to characterize the "age" of the precedent in question when that precedent comprises a line of decisions spanning the latest 25 years—and which way does that cut given the presence of an older line of conflicting precedent that has not been expressly overruled? And it is perhaps more "workable" for an appellate court to have to review only whether the three "*Boykin* rights" have been recited on the record, but if that approach does not reflect a reasonable understanding of the actual federal standard for assessing whether a guilty plea is valid, it is hard to see how "workability" could play a meaningful role in the stare decisis analysis. In any event, we need not resolve these concerns here given our conclusion that the conflict with United States Supreme Court precedent requires us to overrule our decisions applying the "three *Boykin* rights" approach to guilty pleas.

[16] These decisions include *Nash*, 271 Ga. 281, *Britt*, 274 Ga. 611, *Arnold*, 282 Ga. 66, *Hawes*, 281 Ga. 822, *Sutton*, 283 Ga. 28, *Wilson*, 288 Ga. 779, *Tyner*, 289 Ga. 592, *Lejeune II*, 299 Ga. 546, *Foskey v. Battle*, 277 Ga. 480 (591 SE2d 802) (2004), *Pullium v. State*, 278 Ga. 354 (602 SE2d 833) (2004), *Baisden v. State*, 279 Ga. 702 (620 SE2d 369) (2005), *Johnson v. Smith*, 280 Ga. 235 (626 SE2d 470) (2006), *Beckworth v. State*, 281 Ga. 41 (635 SE2d 769) (2006), *State v. Hemdani*, 282 Ga. 511 (651 SE2d 734) (2007), *Denson v. Frazier*, 284 Ga. 858 (672 SE2d 625) (2009), and *Sanders v. Holder*, 285 Ga. 760 (684 SE2d 239) (2009).

to the rule outlined in *Goodman* and explained years before by the United States Supreme Court: a guilty plea is valid as a matter of federal constitutional law if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances. See, e.g., *Goodman*, 249 Ga. at 14-15 (1); *Thomason*, 229 Ga. at 642-643. See also *Brady*, 397 U.S. at 747 (I) n.4, 748 (I)-749 (II) & n.6. As *Goodman* explained, that means there must be "a record of the guilty plea hearing adequate for the reviewing court to determine whether (1) the defendant has freely and voluntarily entered the plea with (2) an understanding of the nature of the charges against him and (3) an understanding of the consequences of his plea." 249 Ga. at 13 (1). But the "failure to advise an accused of his right against self-incrimination" (or the other two "*Boykin* rights") does not require the reversal of a guilty plea where the longstanding "intelligent and voluntary" standard has otherwise been met. See id. at 13-15 (1) (punctuation omitted).[17]

---

[17] A word on harmless error. When a defendant in Georgia courts claims that a guilty plea is invalid as a matter of federal due process, harmless-error

This does not mean that a trial court may neglect to undertake a careful and searching plea hearing with the defendant. As the United States Supreme Court has noted, "a guilty plea is a grave and solemn act to be accepted only with care and discernment." *Brady*, 397 U.S. at 748 (I). In Georgia, our trial courts have always been required to carefully follow the procedures laid out in Uniform Superior Court Rule 33.8 (Georgia's analogue to the federal Rule 11),[18] and our many cases explaining that the defendant must be

---

review is not part of the analysis of that claim. Review for harmless error typically happens in federal courts because such challenges are ordinarily raised under Rule 11 rather than directly under the Constitution. See, e.g., *Stead*, 746 F2d at 356-357; *Gomez-Cuevas*, 917 F2d at 1525; *Johnson*, 1 F3d at 298. Because a deviation from the mandatory procedures of Rule 11 is an "error," the question becomes whether it is "harmless error" under Rule 11 (h). By contrast, when a defendant claims that a guilty plea violates federal due process directly, the question reduces to whether the record affirmatively shows that the defendant's guilty plea was voluntary and intelligent under all the circumstances. *Boykin*, 395 U.S. 238; *Brady*, 397 U.S. at 747-748 (I). If it was, there is no "error" to review for harm. If, on the other hand, the guilty plea was not voluntary and intelligent under the circumstances, that constitutional error requires reversal without further assessment of harm. See *Brady*, 397 U.S. at 747 (I) & n.4; see also id. at 748 (I) n.5 (collecting cases); *Bousley v. United States*, 523 U.S. 614, 618 (118 SCt 1604, 140 LE2d 828) (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'").

[18] The current version of USCR 33.8 reads in full:

The judge should not accept a plea of guilty or nolo contendere from a defendant without first:

(A) Determining on the record that the defendant understands the

61

aware of the relevant circumstances and likely consequences of entering a guilty plea. See, e.g., *Mahaffey v. State*, 308 Ga. 743, 746-747 (2) (a) (843 SE2d 571) (2020); *Bradley v. State*, 305 Ga. 857, 859 (2) (828 SE2d 322) (2019); *Lewis v. State*, 293 Ga. 544, 547 (1) (748

---

nature of the charge(s);

(B) Informing the defendant on the record that by entering a plea of guilty or nolo contendere one waives:

    (1) the right to trial by jury;

    (2) the presumption of innocence;

    (3) the right to confront witnesses against oneself;

    (4) the right to subpoena witnesses;

    (5) the right to testify and to offer other evidence;

    (6) the right to assistance of counsel during trial;

    (7) the right not to incriminate oneself; and that by pleading not guilty or remaining silent and not entering a plea, one obtains a jury trial;

(C) Where a defendant is not represented by counsel, informing the defendant of his right to be assisted by counsel in entering the plea, as well as at trial, and that the defendant is knowingly and voluntarily waiving that right; and

(D) Informing the defendant on the record:

    (1) of the terms of any negotiated plea;

    (2) that a plea of guilty may have an impact on his or her immigration status if the defendant is not a citizen of the United States;

    (3) of the maximum possible sentence on the charge, including that possible from consecutive sentences and enhanced sentences where provided by law; and/or

    (4) of the mandatory minimum sentence, if any, on the charge.

This information may be developed by questions from the judge, the prosecuting attorney or the defense attorney or a combination of any of these.

SE2d 414) (2013); *Phelps v. State*, 293 Ga. 873, 878 (2) (a) n.5 (750 SE2d 340) (2013); *Smith v. State*, 287 Ga. 391, 394 (2) (a) (697 SE2d 177) (2010); *Adams v. State*, 285 Ga. 744, 746-747 (3) (683 SE2d 586) (2009). When a trial court follows these procedures, thereby "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence," the court "leaves a record adequate for any review that may be later sought." *Boykin*, 395 U.S. at 244. But the failure to follow any particular part of these procedures, including informing a defendant about the waiver of the three "*Boykin* rights," is not automatic grounds for reversal as long as the procedures the court followed show that the defendant's guilty plea was voluntary and intelligent under the totality of the circumstances.

D. *Application*

This returns us to Green's appeal. Green's only claim on appeal is that his guilty plea is invalid because the record doesn't show that he was informed of his privilege against self-incrimination. His claim fails.

The record as a whole demonstrates that Green's guilty plea was voluntary and intelligent under the totality of the circumstances. At the plea hearing, Green indicated that he was aware of the charges he was facing, the maximum sentences for those charges, which charges he would be pleading guilty to, and what the recommended sentence would be. Green affirmed that his guilty plea was made knowingly and freely and that no one promised him anything outside the negotiated plea. The trial court confirmed that Green understood the rights he would waive by pleading guilty, including his rights to a jury trial, to cross-examine the State's witnesses, to challenge the State's evidence, to present evidence and witnesses in his favor if Green chose, to testify if he chose, and to appeal a jury's potential verdict of guilty. Then, at the hearing on Green's motion for out-of-time appeal, plea counsel testified that she discussed the charges with Green, informed him of the possible minimum and maximum sentences, and conveyed the plea offer, and that Green wanted to accept the guilty plea. Plea counsel also testified, albeit through objections by opposing counsel, that she has a

general practice of telling clients who plead guilty about the rights they give up by doing so. And plea counsel submitted an affidavit in which she averred substantially the same thing.

This record, taken as a whole, demonstrates that Green entered his guilty plea voluntarily and with awareness of the relevant circumstances and likely consequences, including the constitutional rights he would be waiving by entering a guilty plea. This satisfies the requirements of federal due process, see *Boykin*, 395 U.S. at 243-244; *Brady*, 397 U.S. at 747 (I) n.4. So, notwithstanding the lack of an express indication on the record that Green was specifically informed about his waiver of the right against self-incrimination, his guilty plea was valid.

*Judgment affirmed. All the Justices concur.*

Decided February 20, 2024 — Reconsideration denied March 19, 2024.

Murder. Fulton Superior Court. Before Judge Schwall.

*Lauren B. Shubow, Steven E. Phillips*, for appellant.

*Fani T. Willis, District Attorney, Kevin C. Armstrong, Aslean Z. Eaglin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Meghan H. Hill, Senior Assistant Attorneys General*, for appellee.