NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 7, 2023

S23A0326. HOOD v. THE STATE.

LaGrua, Justice.

Appellant Larry Hood challenges the superior court's order denying his motion to withdraw his guilty plea to malice murder and other crimes in connection with the death of Angela Ritter Davis. Hood claims that his plea was not knowing, intelligent, and voluntary because his plea counsel made an affirmative misrepresentation about the collateral consequences of his plea, i.e., his parole eligibility. For the reasons set forth below, we affirm the superior court's denial of Hood's motion. However, because the superior court committed sentencing errors, we vacate two of Hood's convictions and remand for resentencing.

The record shows that, on November 2, 2020, a Decatur County grand jury indicted Hood for malice murder, felony murder,

1

aggravated assault, kidnapping, false imprisonment, making a false statement, possession of a controlled substance in Schedule I, and false report of a crime. Among other things, the indictment charged Hood with malice murder for "caus[ing] the death of . . . Davis . . . by striking her in the head with a pipe," and it charged Hood with aggravated assault for "mak[ing] an assault upon . . . Davis with intent to murder by striking [her] in the head with a pipe."

On February 1, 2022, the superior court held a plea hearing during which Hood entered a negotiated guilty plea to Count 1 (malice murder), Count 3 (aggravated assault), Count 6 (making a false statement), and Count 7 (possession of a controlled substance in Schedule I). In exchange, the State agreed to nolle pros the remaining charges and recommend a total sentence of life with the possibility of parole, plus 20 years.

At the plea hearing, the State represented that the factual basis for the plea was that Hood beat Davis, his ex-girlfriend, to death with a pipe because she was dating someone else. Davis's body was discovered in a wooded area with blunt impact injuries to the

head, including facial and oral contusions, multiple lacerations of the scalp, and a prominent circular skull fracture with radiating linear fractures. The blood of Davis and Hood was discovered on a pipe that was located near Davis's body. Hood stipulated to the factual basis provided by the State, but he provided some additional details, e.g., that Davis hit Hood with the pipe and injured him, and the State acknowledged this occurred.

Before the plea hearing, Hood and his plea counsel completed and signed a 2-page form containing 32 questions about Hood's constitutional and other legal rights. By signing this form, Hood acknowledged that he understood that the minimum sentence for malice murder was "life" and the maximum sentence was "life w[ith]o[ut] parole." Hood and his plea counsel also signed a two-page form entitled "Plea and Sentence Recommendation," which stated the State was recommending the following sentence: (a) life with the possibility of parole on malice murder (Count 1); (b) 20 years to serve on aggravated assault (Count 3) to be served consecutive to Count 1; (c) 5 years to serve on making a false statement (Count 6) to be

3

served consecutive to Count 1 and concurrent with Count 3; and (d) 3 years to serve on possession of a controlled substance in Schedule I (Count 7) to be served consecutive to Count 1 and concurrent with Count 3.

During his colloquy with the superior court, Hood confirmed that he had signed the "32-question plea transcript form" and that he understood his constitutional rights and had no questions about them. Hood also confirmed that his plea counsel had discussed parole eligibility with him, and he had no questions about it. After finding that there was a factual basis to believe the crime was committed as alleged and that Hood made a knowing, intelligent, and voluntary waiver of his constitutional rights, the superior court accepted Hood's guilty plea. The superior court then orally sentenced Hood consistent with the recommendation on the "Plea and Sentence Recommendation" form.

Two months later (and in the same term of court), Hood's plea counsel filed a timely motion to withdraw guilty plea. Hood was appointed new counsel, and on September 6, 2022, the superior court

4

held an evidentiary hearing on the motion. At the hearing, Hood testified:

> [My plea counsel] told me that a life sentence was 14 years. And if I went through about seven years, I'd parole out with good behavior. I signed a plea under the impression that a life sentence was 14 years. I got to Jackson State Prison and they tell me a life sentence was 30 [years].[1]

Hood also stated that his plea counsel's assistant and investigator told him "that a life sentence was 14 years" and that "everything was self-defense and that [Hood] wouldn't do but seven [years] and [he would] go home."

Hood's plea counsel testified that she told Hood that he was not eligible for parole until after he had served 30 years in prison. She further testified:

> I remember having this discussion with Mr. Hood on numerous times because he kept saying he was 49 and he was going to be 79 when he got out and his parents would

---

[1] OCGA § 17-10-6.1 (c) (1) provides:

Except as otherwise provided in subsection (c) of Code Section 42-9-39, for a first conviction of a serious violent felony in which the accused has been sentenced to life imprisonment, that person shall not be eligible for any form of parole or early release administered by the State Board of Pardons and Paroles until that person has served a minimum of 30 years in prison.

be deceased. And this was a very big deal to him considering the 30-year mark and that's why I know that I went over the 30 years with him.

Hood argued that his guilty plea should be withdrawn because he did not understand that a life sentence meant he was not eligible for parole until after he had served 30 years and there was "no written form . . . that specifically says that he was told that life will be 30 years."

At the conclusion of the hearing, the superior court orally denied Hood's motion to withdraw. On October 6, the superior court issued its order denying the motion, determining that plea counsel's testimony was more credible than Hood's testimony and that Hood failed to show that his plea counsel's performance was deficient.

1. Hood contends the trial court abused its discretion by denying his motion to withdraw his guilty plea. This claim has no merit.

After sentencing, a defendant may withdraw his guilty plea only to correct a manifest injustice. See *McClain v. State*, 311 Ga. 514, 515 (858 SE2d 501) (2021); Uniform Superior Court Rule 33.12

(B) ("In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw a plea of guilty or nolo contendere as a matter of right once sentence has been pronounced by the judge.").

> The test for manifest injustice will by necessity vary from case to case, but it has been said that withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges.

*Powell v. State*, 309 Ga. 523, 524 (1) (847 SE2d 338) (2020).

> There is no constitutional requirement that a defendant be informed of his parole eligibility prior to entering a guilty plea for a guilty plea to be voluntary. Should, however, counsel make an affirmative misrepresentation about the collateral consequences of a plea, such as parole eligibility, the misrepresentation may form the basis of an ineffective assistance of counsel claim.

*Crowder v. State*, 288 Ga. 739, 739 (707 SE2d 78) (2011) (citations omitted). To prevail on his claim, Hood "must show both that his plea counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense." *Wright v. State*, 314 Ga. 355, 357 (877 SE2d 178) (2022) (citing to *Strickland v.*

7

*Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To meet the first prong of the *Strickland* test, Hood "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Wright*, 314 Ga. at 357 (citation and punctuation omitted). To meet the second prong of the *Strickland* test in the guilty plea context, Hood "must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. (citation and punctuation omitted). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Collins v. State*, 312 Ga. 727, 744 (8) (864 SE2d 85) (2021) (citation and punctuation omitted). "This Court accepts a superior court's factual findings and credibility determinations on an ineffectiveness claim unless they are clearly erroneous, but we apply legal principles to the facts de novo." *Powell*, 309 Ga. at 526-527 (2).

8

In this case, the superior court found that plea counsel's testimony that she provided Hood with "informed legal advice regarding the consequences of his decision to plead guilty" was "credible" and that plea counsel's testimony "countered" the testimony of Hood. The superior court's credibility findings, which it was entitled to make, were not clearly erroneous. See *Powell*, 309 Ga. at 525 (1) ("Where the evidence at issue is in conflict, the credibility of witnesses is for the [superior] court to determine."). The superior court then concluded that Hood failed to show that his plea counsel's performance was constitutionally deficient. Because the record supports the superior court's findings, the court did not abuse its discretion in denying Hood's motion to withdraw his guilty plea. See *Wright*, 314 Ga. at 359.

2. At sentencing, the superior court sentenced Hood on both the malice murder count and the aggravated assault count. That was error. See *Miller v. State*, 309 Ga. 549, 552 (3) (847 SE2d 344) (2020) ("When there is no evidence to suggest the occurrence of an aggravated assault independent of the act which caused the victim's

9

death . . . a jury's guilty verdict on the aggravated assault merges as a matter of fact with the malice murder verdict for sentencing purposes." (citation and punctuation omitted)). Hood does not raise this error. But "an exercise of our discretion on direct appeal to correct a merger error that harms a defendant (but of which he has not complained) may avoid unnecessary habeas proceedings and thereby promotes judicial economy." *Dixon v. State*, 302 Ga. 691, 697 (4) (808 SE2d 696) (2017). Accordingly, we vacate Hood's conviction for aggravated assault (Count 3).

3. Also at sentencing, during the superior court's oral pronouncement of Hood's sentence, the court sentenced Hood to serve three years in prison on the possession of a controlled substance in Schedule I count (Count 7). However, Hood's written sentence reflects that he was sentenced to serve seven years in prison on Count 7. But the maximum sentence for possession of a controlled substance in Schedule I, under the circumstances of this case, is three years. See OCGA § 16-13-30 (c) (1). Although this error has not been raised by Hood, we vacate Hood's void sentence on

10

Count 7 and remand the case for resentencing within the statutory parameters. See *Barber v. State*, 314 Ga. 759, 766 (3) (879 SE2d 428) (2022) ("[A] sentence is void if the court imposes punishment that the law does not allow." (citation and punctuation omitted)); *Goodman v. State*, 313 Ga. 762, 770 (2) (c) (873 SE2d 150) (2022) ("[W]e often do exercise our discretion sua sponte to vacate a sentence for the benefit of defendants if we notice that it is void.").

*Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.*