**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: October 15, 2024

S24A1090. ESPINOSA v. THE STATE.

MCMILLIAN, Justice.

On August 11, 2021, Andy Espinosa pleaded guilty to the malice murder of Zachary Mejia and to other related offenses.[1] On

---

[1] Zachary died on December 9, 2020. On January 26, 2021, a Chattooga County grand jury indicted Espinosa for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on cruelty to children (Count 3), aggravated assault (family violence) (Count 4), cruelty to children in the first degree (Count 5), two counts of possession of a knife during the commission of a felony (Counts 6 and 7), and cruelty to children in the third degree (Count 8). On August 11, 2021, Espinosa pleaded guilty on all counts without a recommendation as to sentencing from the State. The trial court sentenced Espinosa to serve life without the possibility of parole on Count 1, a consecutive sentence of five years to serve on Count 6, and a concurrent 12-month sentence on Count 8. Counts 4 and 7 merged for sentencing purposes. Though the trial court purported to merge the felony murder counts, they were actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-72 (4) (434 SE2d 479) (1993). We also note that, although the trial court merged Count 5 with Count 1, the crimes of malice murder and cruelty to children in the first degree do not merge. See *Vasquez v. State*, 306 Ga. 216, 234-35 (c) (4) (830 SE2d 143) (2019) (noting that "even if the same conduct establishes the commission of both malice murder and cruelty to children [in the first degree], the two crimes do not merge"). However, the State has not cross-appealed on this issue, and we decline to

appeal, Espinosa claims that the trial court erred in denying his motion to withdraw his guilty plea because plea counsel rendered ineffective assistance by failing to advise him of an insanity defense. For the following reasons, we discern no abuse of discretion in the trial court's ruling and affirm.

1. In presenting its factual basis for the guilty plea, the State proffered the following. Espinosa was living with his girlfriend, Sarah Mejia, and her four children. Zachary was the eldest at 15 years old. On December 8, 2020, Espinosa and Zachary got into a physical fight, and Zachary "got the better of" Espinosa. Espinosa felt "humiliated and embarrassed" following the fight and continued to feel that way when he went to work the next day. The next day, Espinosa made a search on Quora – a question and answer blog website – that read "What does it feel like to murder someone?"[2]

---

correct the error in this case. See *Dixon v. State*, 302 Ga. 691, 696-97 (4) (808 SE2d 696) (2017) (though appellate court has discretion to correct merger error, when the error benefits the defendant and the State fails to raise it by cross-appeal, this Court will only exercise its discretion to correct such error in exceptional circumstances).

[2] Records were obtained from the Quora website and showed that the search had been made several hours prior to the stabbing.

On that same day, Espinosa returned home from work, saw Zachary's lights on through his window, and thought Zachary "must want something with [him] again." Espinosa grabbed a knife from his car and entered the home. He immediately opened the door to Zachary's room, saw Zachary, and rushed at him. Espinosa stabbed Zachary repeatedly with the knife and then called 9-1-1. Sheriff's deputies arrived and arrested Espinosa. Espinosa later claimed that he told officers at the scene that he had "snapped" and was taken over by a "demon" during the stabbing.[3] An investigator who responded to the 9-1-1 call noted that Zachary had suffered five stab wounds – to the right eyebrow, the neck (a major wound), the left upper back, the left mid torso, and the left lower torso – and sustained 11 additional lacerations. Zachary was transported to the hospital, where he succumbed to his injuries. The youngest of the four children was the only other person in the home at the time of the stabbing.

---

[3] Espinosa made these claims at the motion to withdraw guilty plea hearing. During the guilty plea hearing, however, Espinosa never referenced a demon or any other similar reason for his actions.

Following the State's proffer, the court went through the plea colloquy with Espinosa. Espinosa stated that he had gone over the plea form with his counsel, gave true answers to the questions, and signed the form after they talked. Espinosa affirmed that he understood the charges. He also confirmed that he had "plenty of time" to talk with his counsel, told counsel everything he knew about the case, and was satisfied with counsel's representation thus far. Plea counsel agreed that he had discussed Espinosa's constitutional rights at length with him, and the court reviewed those rights again with Espinosa to ensure his understanding. The court described the sentencing ranges for each of the eight counts against Espinosa and explained that the maximum possible sentence Espinosa could face was life without the possibility of parole, plus five years consecutive and an additional twelve months consecutive. The court also explained that it could sentence Espinosa in the same manner after a trial as it could at the guilty plea hearing.

Espinosa then pleaded guilty to the eight charges against him "of his own free will," with an understanding of "the consequences of

4

his pleas." The court accepted each of the pleas and sentenced Espinosa.

On September 7, 2021, Espinosa – through new counsel – timely filed a motion to withdraw guilty plea, alleging that his plea counsel was ineffective and that a withdrawal was necessary to correct the manifest injustice that resulted.[4] A motion to withdraw guilty plea hearing was held on February 23, 2024. At that hearing, new counsel argued that plea counsel failed to adequately investigate Espinosa's state of mind and that had he done so, he would have advised Espinosa of a colorable insanity defense.

At the hearing, plea counsel testified that he had practiced in Georgia since 2007. He had worked both as a public defender and in private practice as a criminal defense attorney and had handled thousands of felony cases. Counsel explained the way he typically

---

[4] The deadline for filing a motion to withdraw a guilty plea is the end of the term in which a trial court enters a judgment of conviction and sentence is pronounced. See *Harris v. State*, 319 Ga. 133, 136 (1) (b) & n.2 (902 SE2d 574) (2024). Espinosa entered his guilty plea, was sentenced, and moved to withdraw his guilty plea within the same term of court. See OCGA § 15-6-3 (22) (B) (terms of court for Chattooga County Superior Court begin on the first Monday in February and August).

handled a murder case, i.e., meeting with the client, requesting discovery, taking discovery to the client to go over it with them, speaking with family members, talking to the district attorney about possible non-jury resolutions, and relaying those to the client.

Counsel testified that he received Espinosa's case about a year before the plea hearing took place; that Espinosa described having "rage" come over him when he got home on December 9, 2020; and that Espinosa acted rationally in calling 9-1-1 afterwards and was able to talk to law enforcement at the scene about what happened. After reviewing discovery and based on his conversations with Espinosa, counsel "didn't really see a defense at all" for the case and had ruled out "pretty much everything." He could not recall if there was any law enforcement body camera footage of Espinosa at the time of his arrest describing the homicide (i.e., indicating that Espinosa "snapped" or anything about a demon). He had no recollection of Espinosa ever talking about demons coming over him, blanking out, or not remembering what happened on the night of the stabbing. As such, he did not ask Espinosa about his mental health

6

or attempt to further ascertain his state of mind that night. Espinosa told him early on that "he did not want to go to trial" and instead "wanted to find another resolution." Counsel spoke with the district attorney about Espinosa's interest in a non-jury disposition if he could get something less than life without parole, but the district attorney would not consider it. Counsel explained this to Espinosa and told him that he could go to trial but thought the chances of succeeding were "slim to none." Espinosa indicated he would rather take the plea than go to trial. Counsel testified that he met with Espinosa four or five times before the plea – spending a total of about eight hours with him – and at no point did he suggest that there might be a colorable defense because he "couldn't think of one" to offer and "didn't see a way for [an insanity defense] to be successful."

Counsel believed a plea would be Espinosa's best chance at receiving parole and would avoid painting Espinosa in a worse light, given the evidence about him that would be introduced at a trial. Counsel also noted that, at the sentencing hearing, Espinosa made

no mention that a demon was to blame for the stabbing; instead, he provided reasons for his anger: Zachary was "heading in the wrong direction," acted distant from his mom and Espinosa, and "started to act just like his brother being disrespectful, talking back, not following the house rules, things of that nature." Ultimately, counsel testified that he did not believe there was any lapse of reason when Espinosa took Zachary's life and felt that Espinosa could distinguish right from wrong at the time of the stabbing.

Espinosa testified at the hearing, however, that he told plea counsel during their first meeting (or at least at some point) that he came home from work on December 9, 2020, "something got over into [his] head and [he] snapped, like a demon," and "something compelled [him] to do something evil." He did not understand what he was doing was wrong during the stabbing and was "incapable of doing the right thing" at the time. Plea counsel did not follow up about his mental state during the homicide. Instead, counsel advised him to go forward with the plea deal, specifically because he believed the judge's gender might incline her to give a lesser sentence.

8

Espinosa took counsel's advice to accept the plea, but he claimed that he would not have done so if counsel had told him about the insanity defense.

2. Espinosa argues that plea counsel was ineffective because he failed to advise him of a "colorable insanity defense," and that the trial court erred in refusing him to withdraw his guilty plea based on counsel's ineffectiveness.

After sentencing, a defendant may withdraw his guilty plea only to correct a "manifest injustice," such as if a defendant was denied effective assistance of counsel. *Hood v. State*, 315 Ga. 809, 812 (1) (884 SE2d 901) (2023). To prevail on a claim of ineffective assistance of counsel, Espinosa must show that plea counsel's performance was constitutionally deficient and that he was prejudiced as a result. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

To prove deficient performance, Espinosa "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's

9

decisions were made in the exercise of reasonable professional judgment." *Hood*, 315 Ga. at 812 (1) (cleaned up). To establish prejudice "in the guilty plea context, [Espinosa] must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 813 (1) (cleaned up). If Espinosa fails to meet his burden of proving either prong of the *Strickland* test, "the reviewing court does not have to examine the other prong." Id. (citation and punctuation omitted).

"This Court accepts a superior court's factual findings and credibility determinations on an ineffectiveness claim unless they are clearly erroneous, but we apply legal principles to the facts de novo." *Hood*, 315 Ga. at 813 (1) (citation and punctuation omitted). And "[t]he court's decision on a motion to withdraw a guilty plea will not be disturbed absent an obvious abuse of discretion." *Wright v. State*, 314 Ga. 355, 357-58 (877 SE2d 178) (2022) (cleaned up). Because judicial scrutiny of counsel's performance is highly deferential, there is a strong presumption that a lawyer rendered

reasonable professional assistance. See *Arnold v. State*, 292 Ga. 268, 270 (2) (a) (737 SE2d 98) (2013).

Espinosa has failed to establish that plea counsel's decision not to advise him of a possible insanity defense (and instead to recommend a plea) was objectively unreasonable. Espinosa does not claim on appeal that he had past mental health issues or records that plea counsel should have reviewed, nor does he present any expert evidence supporting that he was actually insane at the time of the stabbing. Instead, Espinosa argues that because he told officers after the stabbing that a "demon got into [him]," counsel should have advised him of an insanity defense. However, based on his many years of experience, multiple conversations with and observations of Espinosa, counsel made the strategic choice to advise Espinosa to pursue a plea with the hope of obtaining a sentence of life with the possibility of parole rather than proffering a defense that counsel believed was inconsistent with the facts, including that Espinosa conducted an internet search about murdering someone on the same day as the stabbing and after the stabbing, called 9-1-1

11

and spoke intelligently with the responding law enforcement officers. Moreover, the trial court was authorized to credit plea counsel's testimony over Espinosa's regarding whether they had discussed Espinosa's allegedly being overcome by some sort of "demon" or "evil." See *Simmons v. State*, 314 Ga. 883 (3) (c) (880 SE2d 125) (2022) (explaining that a trial court, as finder of fact, is entitled to credit [plea] counsel's testimony as to his efforts to investigate a case). Espinosa has not presented evidence that overcomes the strong presumption of reasonableness, so it cannot be said that counsel chose an objectively unreasonable course of action under the circumstances. See *McKiernan v. State*, 288 Ga. 140, 142 (1) (702 SE2d 170) (2010) (no ineffective assistance when plea counsel spoke with the defendant's psychiatrist and based on that information as well as his own observations of the defendant "made a strategic choice that an incapacity defense was not in his client's best interest").

The trial court concluded that Espinosa failed to show that his plea counsel's performance was constitutionally deficient. Because

the record supports the trial court's findings, we conclude that the court did not abuse its discretion in denying Espinosa's motion to withdraw his guilty plea.

*Judgment affirmed. All the Justices concur.*