NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: April 8, 2025

S25A0267.  PINCKNEY v. THE STATE.

PINSON, Justice.

Harry Pinckney was charged with malice murder and other crimes in connection with the shooting death of Tommy Frazier.[1] At trial, Pinckney argued that he committed voluntary manslaughter rather than murder. But at the close of evidence, the trial court found that there was not enough evidence to charge the jury on voluntary manslaughter. Pinckney then chose to accept a negotiated

---

[1] Pinckney was indicted by a Chatham County grand jury on December 2, 2020, for malice murder, two counts of felony murder, two counts of aggravated assault, and nine counts of felon in possession of a firearm. In return for his guilty plea to malice murder and aggravated assault, the State nolle prossed the remaining charges. The trial court sentenced Pinckney to life in prison with the possibility of parole on the malice murder charge and to a concurrent sentence of 20 years on the aggravated assault charge. After sentencing, Pinckney timely moved to withdraw his plea, which the trial court denied, and timely appealed the denial of that motion to this Court. The case was docketed to the Court's term beginning in December 2024 and was submitted for a decision on the briefs.

guilty plea to malice murder and aggravated assault with a sentence of life in prison with a possibility of parole rather than face a sentence of life without parole if the jury convicted him of murder. After the trial court accepted the plea and pronounced sentence, Pinckney moved to withdraw his plea. He claimed that his counsel gave constitutionally ineffective assistance because he did not advise Pinckney that the trial court's refusal to instruct the jury on voluntary manslaughter could be appealed. The trial court denied the motion, and Pinckney appealed that ruling to this Court. For the reasons set forth below, we affirm.

1. The evidence at Pinckney's jury trial showed the following. Frazier went to a grocery store on December 31, 2019. Surveillance video from the store showed that he interacted with a cashier, Tanaisha Pinckney, while he bought groceries. After Frazier left the store, Tanaisha called her mother and said that a man came up to her at work, threatened her and her brother, and asked her where her brother was. Her mother testified at trial that Tanaisha sounded scared and said she was not safe.

Tanaisha's mother then called Pinckney, Tanaisha's father, about what happened. Pinckney was with his cousin, Kenneth Joyner, when he got the call. Joyner testified that Pinckney took a phone call and seemed "very agitated" and "upset" afterwards. Pinckney told Joyner that somebody was at the grocery store "messing with" his daughter. The pair then went to the store. Joyner testified that Pinckney asked him to come because "if the guy was there" Pinckney might fight him and would go to jail. After seeing and talking to his daughter at the grocery store, Joyner said Pinckney was "quiet" and "withdrawn" but still "seemed slightly agitated."

They then decided to go to a liquor store. Pinckney got another call on the way there, and Joyner said he was "quiet still" and did not seem agitated at that point. Pinckney then told Joyner that "some guy with a U-Haul" was the one "messing with" his daughter. Instead of going to the liquor store, Pinckney drove to Frazier's house. He parked, got out of the car, and approached a U-Haul moving truck that was parked in front of the house. Frazier and another man were inside the truck. As Pinckney approached, Frazier told his

passenger to record the interaction on his cell phone. The passenger heard Pinckney say something to the effect of "I don't know what you and my son have going on. But it doesn't concern my daughter." Frazier responded that he wanted to talk to Pinckney "man to man." Joyner saw the interaction from farther away, but he testified that their discussion started getting louder and Pinckney pulled out a gun. Joyner further testified that Frazier pulled up his pants and said something like "you not the only one." Pinckney then fired multiple shots, killing Frazier. About 20 to 30 minutes had passed from the time Tanaisha first called her mother to the time shots were fired.

Pinckney was later arrested and charged with murder. Pinckney argued at trial that he should be convicted of voluntary manslaughter rather than murder. The defense's theory was that Pinckney acted in a "heat of passion" that arose from Frazier threatening his daughter and going to her workplace. After the close of evidence, however, the trial court declined to give an instruction on voluntary manslaughter to the jury. At that point, the court suggested that the

4

parties seek a negotiated plea because "there are some questions in my mind. I'm thinking about *Strickland v. Washington*." The State eventually offered a guilty plea for a sentence of life with the possibility of parole. Pinckney accepted the negotiated plea. At that point, the trial court spoke with him to ensure the plea was voluntary, accepted the plea, and sentenced him to life with the possibility of parole.

After the sentence was entered and in the same term of court, Pinckney moved to withdraw his guilty plea. The trial court held a hearing and heard testimony from trial counsel and from Pinckney. New counsel at the hearing argued that Pinckney's trial counsel was ineffective for failing to advise Pinckney that he could appeal the denial of an instruction on voluntary manslaughter. The trial court denied the motion, and Pinckney timely appealed to this Court.

2. After sentencing, a defendant may withdraw his guilty plea only to correct a "manifest injustice." *Espinosa v. State*, 320 Ga. 98, 102 (2) (907 SE2d 691) (2024). That standard is met if a defendant was denied effective assistance of counsel. Id. Pinckney argues that

5

his plea was the product of manifest injustice because his counsel was ineffective by not advising him of his appellate rights. To prevail on a claim of ineffective assistance of counsel, Pinckney must show that his trial counsel performed deficiently and that counsel's error caused him prejudice. *Starks v. State*, 320 Ga. 300, 303 (2) (908 SE2d 614) (2024) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To show deficiency, Pinckney must establish that counsel "performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." Id. (citation and punctuation omitted). And prejudice is established in the context of guilty pleas by showing that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Powell v. State*, 309 Ga. 523, 526 (2) (847 SE2d 338) (2020) (citing *Hill v. Lockhart*, 474 U.S. 52, 57-59 (106 SCt 366, 88 LE2d 203) (1985)) (punctuation omitted).

When counsel fails to consult with a defendant about taking an

appeal, that failure amounts to constitutionally deficient perfor-mance if "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Harvey v. State*, 312 Ga. 263, 266 (2) (862 SE2d 120) (2021) (quoting *Ringold v. State*, 304 Ga. 875, 879 (823 SE2d 342) (2019); citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (II) (A) (120 SCt 1029, 145 LE2d 985) (2000)) (punctuation omitted).

Neither basis for establishing deficient performance is met here. Nothing in the record indicates that Pinckney actually told counsel he was interested in appealing. And neither is there reason to think that a rational defendant would have wanted to appeal under the circumstances. Doing so would have required passing up a negotiated sentence of life with parole in favor of an almost certain guilty verdict and sentence of life without parole (Pinckney had asserted no defense to the shooting other than voluntary manslaughter, and the maximum sentence he faced for malice murder was life

7

in prison without parole), in hopes of winning an appeal and a new trial. Taking such a significant gamble would not have been rational under these circumstances because Pinckney's claim on appeal certainly would have failed. *Flores-Ortega*, 528 U.S. at 480 (II) (A) (stating that a rational defendant would want to appeal "for example, because there are nonfrivolous grounds for appeal"). According to Pinckney, that claim would have been that the trial court erred by not instructing the jury on voluntary manslaughter because Frazier threatening Pinckney's daughter at her job was sufficient provocation to support a verdict of voluntary manslaughter. But this conduct falls far short of what is required to establish "serious provocation sufficient to excite [sudden, violent, and irresistible] passion in a reasonable person." OCGA § 16-5-2 (a). See *Howard v. State*, 288 Ga. 741, 745-746 (4) (707 SE2d 80) (2011) (threatening defendant's family member with a gun outside the defendant's presence was not slight evidence sufficient to warrant instruction on voluntary manslaughter); *Anderson v. State*, 319 Ga. 56, 61 (4) (901 SE2d 543) (2024) ("[T]hreats and insults on their own are not enough to support

a voluntary manslaughter instruction."); *Allen v. State*, 319 Ga. 415, 422 (2) (902 SE2d 615) (2024) ("[W]ords alone are almost never sufficiently provoking."); *Rountree v. State*, 316 Ga. 691, 694-695 (2) (889 SE2d 803) (2023) (racial epithets and threats made directly to the defendant did not require instruction on voluntary manslaughter because "words alone" are not serious provocation); *Campbell v. State*, 292 Ga. 766, 767-768 (2) (740 SE2d 115) (2013) (angry words are not enough to instruct on voluntary manslaughter). Absent any evidence of serious provocation to support a charge of voluntary manslaughter, an appeal asserting that the trial court erred in not giving such a charge would have failed. See *Annunziata v. State*, 317 Ga. 175, 179 (891 SE2d 814) (2023) (stating that a jury charge is required if there is slight evidence to support it, but that it is still "a question of law for the courts to determine whether the defendant presented any evidence of sufficient provocation") (citation and punctuation omitted). And without a viable claim available to him on appeal, no rational defendant would have gambled on an appeal instead of taking the negotiated plea and avoiding a sentence of life

9

without parole. See *Orozco v. State*, 362 Ga. App. 388, 390-391 (868 SE2d 798) (2022) (concluding that a rational defendant would not want to appeal where there were no colorable grounds for appeal).

Because Pinckney has not established that counsel rendered deficient performance by not consulting with him about appealing the trial court's failure to instruct the jury on voluntary manslaughter, his claim fails. The trial court therefore did not err in denying Pinckney's motion to withdraw his guilty plea.

*Judgment affirmed. Peterson, CJ, Warren, PJ, and Bethel, Ellington, McMillian, LaGrua, and Colvin, JJ, concur.*