NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 21, 2026

S25A1213. WILLIAMS v. THE STATE.

LaGrua, Justice.

Appellant Russell Williams, who pleaded guilty to malice murder and other crimes in connection with the beating death of Marcos Guerra-Lopez, appeals the trial court's denial of his motion to withdraw his guilty plea.[1] On appeal, Williams argues that the

---

[1] The crimes occurred on December 7 and 9, 2018. On February 27, 2019, a Gwinnett County grand jury indicted Williams and co-indictees Zarius Jajuan Williams and Glenda Victoria Carter, individually and as parties to a crime, for malice murder (Count 1); felony murder predicated on armed robbery (Count 2); felony murder predicated on aggravated battery (Count 3); felony murder predicated on aggravated assault (Count 4); armed robbery (Count 5); aggravated battery (Counts 6, 10, and 11); aggravated assault (Counts 7, 8, 12, and 13); and criminal intent to commit armed robbery (Count 9). On April 26, 2023, Williams entered a non-negotiated guilty plea to all counts. The trial court sentenced Williams to life with the possibility of parole on Counts 1 and 5, to run concurrently; and 20 years in confinement on each of Counts 9–12, to run concurrently with Count 1. The remaining counts merged or were vacated by operation of law. On May 4, 2023, Williams was appointed new counsel, and on May 23, 2023, counsel filed a motion to withdraw Williams's guilty plea. On March 12, 2025, the trial court held an evidentiary hearing on the motion, and the trial court entered an order denying the motion on May 1, 2025. Williams filed a timely notice of appeal to this Court, and the case was docketed in this Court to the August 2025 term and submitted for a decision on the briefs.

trial court erred in denying his motion to withdraw his guilty plea because (1) he did not knowingly, voluntarily, and intentionally waive the rights mentioned in *Boykin*;[2] and (2) his plea counsel was constitutionally ineffective by coercing him to enter a guilty plea. As explained below, these claims fail. Accordingly, we affirm the trial court's denial of Williams's motion to withdraw his guilty plea. However, because the trial court committed sentencing errors, we remand the case to correct the sentence.

Williams's trial began on April 24, 2023. On the third day of trial, Williams's co-indictee and brother, Zarius, testified against him, and Williams's other co-indictee, Carter, was scheduled to testify after Zarius.[3] However, after Zarius testified, Williams decided to enter a plea. The trial court then conducted a plea hearing, and during the hearing, the prosecutor recited the following facts[4]: On December 7, 2018, Guerra-Lopez went to an apartment,

---

[2] *Boykin v. Alabama*, 395 US 238 (1969).
[3] Prior to Williams's trial, Zarius and Carter both pleaded guilty and were sentenced to life with the possibility of parole.
[4] The record does not include any testimony from Williams's trial. As such, this factual background is limited to the facts offered in the prosecutor's

where he expected to meet Carter. When Guerra-Lopez arrived, Williams and Zarius were hiding in a closet. Williams and Zarius, who was armed with a bat, repeatedly struck Guerra-Lopez, who later died from blunt-force trauma to the head. Williams, Zarius, and Carter then stole a cell phone and money from Guerra-Lopez.

Williams, Carter, and Zarius left the apartment and used the stolen money to buy food. Williams later invited another person, Simon Fuentes, to the same apartment where Guerra-Lopez was killed. When Fuentes arrived at the apartment on December 9, 2018, Williams held a knife to Fuentes's throat while Zarius hit Fuentes with a bat. Fuentes fought back and escaped the apartment, drove away, and got help. Law enforcement subsequently apprehended Williams and found a knife, Guerra-Lopez's wallet, and Guerra-Lopez's identification card in Williams's vehicle. Law enforcement also recovered Guerra-Lopez's phone, which was found in the hotel room where the suspects were apprehended.

During the plea hearing, Williams testified that he understood

proffer from the guilty plea hearing.

3

the charges that he was facing. The State then asked the following

questions:

> [PROSECUTOR]: Do you understand that there are certain rights that you're entitled to have and by coming forward and entering a plea of guilty you're essentially waiving those rights? Those rights include the right to a trial by jury, the right to be presumed innocent, the right to confront any witnesses against you, the right to subpoena witnesses for your defense, the right to testify yourself as well as offer any other evidence, the right to have an attorney assist you throughout trial, and the right to not incriminate yourself. Do you understand that you're waiving those rights today?
>
> [WILLIAMS]: (No response.)
>
> [Whereupon an off-the-record discussion was held between Williams and his counsel.]

After Williams spoke to his plea counsel,[5] the trial judge

advised Williams that the trial court would not "mind continuing on

with this trial to its conclusion" but that Williams's plea counsel

indicated Williams wanted to enter a plea. The following exchange

then occurred:

> [TRIAL JUDGE]: If you don't want to do that, that's fine, let's continue on with the trial. If you want to do that, I'm going to need you to listen carefully to the questions that

---

[5] Williams's plea counsel also represented Williams during his jury trial.

4

are being asked of you, and I'm going to need you to answer loudly so that everyone can hear and that we can make a record of these proceedings. Do you understand me?

[WILLIAMS]: Yes, sir. Yes, your Honor.

[TRIAL JUDGE]: In fact, do you want to go ahead and enter a plea of guilty to these charges?

[WILLIAMS]: It's in my best interest, Judge.

The trial judge asked the prosecutor if the State would accept an *Alford*[6] plea, and the prosecutor indicated that the State was willing to do so. The trial judge then described the nature of an *Alford* plea and again asked Williams if he wanted to continue with a "best-interest plea," to which Williams responded, "Yes, sir." Following that response, the prosecutor asked Williams, "Do you understand that if you were to plead not guilty or [do] not enter a plea at all then we would go ahead and proceed with the jury trial?" Williams responded, "Yes, ma'am." The prosecutor then detailed the following on the record: (1) the minimum and maximum

---

[6] See *North Carolina v. Alford*, 400 US 25 (1970).

5

punishments for each of the charges that Williams was facing; (2) the nature of a non-negotiated guilty plea in which the trial judge determines the sentence; and (3) the possible conditions of probation if the trial judge were to include probation in the sentence. For all three, Williams stated that he understood.

Next, the prosecutor asked Williams if "anyone forced [Williams] or promised [Williams] anything in exchange for entering this plea of guilty here today?" Williams responded, "Yes," and the prosecutor then asked, "Someone has forced you to enter a plea of guilty?" Williams again responded, "Yes." The trial judge interjected, stating the following:

> Okay. Sir, basically, we have got to have a plea that you are doing of your own free will. I understand that things have changed here in the courtroom during the course of the trial, but I cannot accept a plea that somebody says is being forced upon them. This has to be your decision and your decision alone. So if your response is that somebody is forcing you to enter this plea, then we're going to need to continue on with the trial of this case.

Williams and his plea counsel then had another off-the-record conversation, and when it concluded, the following exchange

6

occurred:

[PLEA COUNSEL]: Are you being forced to enter this plea?

[WILLIAMS]: I'm good, Judge.

[TRIAL JUDGE]: I'm sorry?

[WILLIAMS]: I'm good.

[PLEA COUNSEL]: Well, you haven't answered the question. Are you being forced to enter the plea?

[WILLIAMS]: No.

[TRIAL JUDGE]: Okay. So, Mr. Williams, I want there to be a record of what's going on here today. Other than what is going on in terms of the evidence that has been produced in this case, is anyone or anything forcing you to enter this plea or putting pressure on you to enter this plea?

[WILLIAMS]: No.

[TRIAL JUDGE]: And is this your decision to enter a best-interest plea of guilty to all 13 counts of the indictment?

[WILLIAMS]: (No response.)

[PLEA COUNSEL]: You need to answer the question.

[Whereupon, an off-the-record discussion was held between Williams and his counsel.]

[TRIAL JUDGE]: Is that your decision?

[PLEA COUNSEL]: You have to answer the judge's question.

[WILLIAMS]: Yes, Judge.

Following that exchange, the prosecutor asked Williams if he was satisfied with his plea counsel, and Williams indicated that he was. Williams and his plea counsel then had another off-the-record conversation. Afterwards, Williams affirmed that he had enough time to speak to his plea counsel and that he was entering the guilty plea both freely and voluntarily. The prosecutor then reiterated the nature of an *Alford* plea and asked Williams if he wanted to proceed with the *Alford* plea, to which Williams responded, "Yes, ma'am." The prosecutor also detailed Williams's appellate and habeas corpus rights, and Williams affirmed that he understood those rights.

After argument from plea counsel, Williams made a statement to the trial judge, which included the following remarks: "I just want to let you know, your Honor, that I'm not a murderer. I'm not who they're trying to accuse me of being." The following exchange then

8

occurred:

> [TRIAL JUDGE]: So, Mr. Williams, we are here in trial. It's now 12:40 on the third day of trial. The jury is still in the deliberation room, expecting to come back here and continue with the trial of the case, if that's what you want. Do you understand what I just told you?
>
> [WILLIAMS]: Yes, your Honor.
>
> [TRIAL JUDGE]: And we've had some discussions. We've cleared the courtroom so that you could speak with your stepfather after your brother, Zarius Williams, gave his testimony. And you had that opportunity, correct?
>
> [WILLIAMS]: Yes, your Honor.
>
> [TRIAL JUDGE]: So this is your opportunity at this point in time to basically continue on with the trial, if that's what you want to do. Do, in fact, you want to continue on with this trial?
>
> [WILLIAMS]: No, your Honor.
>
> [TRIAL JUDGE]: Do you need any more time to talk to your attorney before we conclude this matter?
>
> [WILLIAMS]: Yes, your Honor, if that's all right with the Court.

The trial judge asked Williams if he would like to speak to his plea counsel in the back of the courtroom. Williams indicated he would, but while the trial judge was arranging to clear the back of

9

the courtroom, Williams's plea counsel said, "Judge, he said he didn't need any more time." The trial judge asked Williams if he was sure, and the trial transcript reflects that Williams nodded his head. The following exchange then occurred:

> [TRIAL JUDGE]: I want you -- I want you to have as much time as you need, Mr. Williams, because this is an important decision. So if you need more time, I'm willing to give you that time. Do you need more time to talk to your attorney?
>
> [WILLIAMS]: We can proceed, your Honor.
>
> [TRIAL JUDGE]: Do you need more time to talk to your attorney?
>
> [WILLIAMS]: No, your Honor.
>
> [TRIAL JUDGE]: Are you sure?
>
> [WILLIAMS]: Yes, sir.
>
> [TRIAL JUDGE]: Do you want me to accept your plea as a best-interest plea?
>
> [WILLIAMS]: Yes, your Honor.
>
> [TRIAL JUDGE]: Do you have any questions or concerns about entering that plea?
>
> [WILLIAMS]: No, your Honor.

The trial judge accepted Williams's guilty plea, determining it was "freely, voluntarily, and intelligently entered based upon the responses [Williams had] given to the questions that were asked of [Williams]." After sentencing Williams, the trial judge asked Williams if he had any questions concerning the sentence, and Williams stated that he did not.

Following entry of the final disposition, Williams, represented by new counsel, timely filed a motion to withdraw his guilty plea. In the motion, Williams claimed that withdrawal should be permitted because (1) he did not waive the rights mentioned in *Boykin*, (2) his plea counsel was ineffective, and (3) his plea was not voluntary. At a hearing on Williams's motion to withdraw his guilty plea, both Williams and his plea counsel testified.

Williams's plea counsel testified that, when the trial stopped and the plea hearing commenced, he believed there was sufficient evidence to convict Williams. According to plea counsel, Williams "didn't want to enter the plea when [they] were having discussions initially" and "continually maintained that he was not a murderer."

11

Plea counsel then explained to Williams that, "under the law as a party to a crime," Williams would probably be convicted "because the evidence was overwhelming." Plea counsel testified that he believed it was in Williams's best interest to enter a plea, but Williams did not want to enter a plea and felt pressure to do so. Nevertheless, plea counsel confirmed that the decision to enter a plea ultimately belonged to and was made by Williams.

Plea counsel also testified that he had represented criminal defendants in over 100 jury trials and had handled thousands of guilty pleas. Additionally, before trial, Williams received a mental evaluation and was determined to be competent to stand trial. Plea counsel reviewed all the discovery and discussed the case with Williams prior to trial, and plea counsel noted that he found Williams to be "thoughtful and intelligent." At trial, after Zarius testified and inculpated Williams, plea counsel told Williams, "[I]t's over."

Plea counsel further testified that, in his conversation with Williams at the plea hearing, he never threatened or physically

12

touched Williams, and he did not force Williams to enter a plea. Plea counsel also stated that, when discussing the plea with Williams, he understood Williams's "position" regarding the plea but noted that Williams's "position [wa]s not supported by the law [related to party-to-a-crime]." Plea counsel testified that Williams "didn't seem confused, just more so, you know, really apprehensive and, you know, remorseful that it had gotten this far." Plea counsel said he was confident Williams understood the nature of a guilty plea, despite his reluctance to enter a plea.

Following the testimony from Williams's plea counsel, Williams testified at the plea hearing as follows: After Zarius testified at trial, Williams was reluctant to enter a plea, but his plea counsel was "forceful" and "overbearing" in "pressuring" him to do so. Williams affirmed that his plea counsel spoke to him in a "harsh manner," but Williams denied that plea counsel ever used "profane language" towards him. Williams testified that he did not want to enter the plea because he did not believe he was a murderer, and he felt "coerced" to enter a plea. Williams indicated that, when he

13

entered the plea, he did not understand that he was waiving his right against self-incrimination, right to question witnesses, and right to remain silent. Williams testified that he did not voluntarily enter his plea, and he would have continued with trial if not for his plea counsel's actions.

However, Williams also conceded that he recalled (1) telling the trial judge that it was in his "best interest" to enter a plea; (2) hearing the maximum penalties for each charge; and (3) and hearing the trial judge say that the court was prepared to continue with the trial. When asked whether he recalled telling the trial judge that he was not being forced to enter a plea, Williams responded: "Yeah. I only said that because [plea counsel] didn't want to continue on with the trial. He already said that he didn't want to fight the case. He said the case was over with. He said he really didn't want to be here."

Williams testified that, when asked at the plea hearing if he was being forced to enter a plea, his response was initially "yes," but he later changed it to "no" because his plea counsel was "trying to get [him] to sign [the plea form]," which he reluctantly signed. When

asked at the motion hearing if he was satisfied with the services of his plea counsel, Williams testified, "I guess so."

The trial court subsequently denied Williams's motion to withdraw his guilty plea, concluding as follows: "Prior to entering his guilty plea, [Williams] was appropriately advised of his rights and the [trial court] found that he understood those rights. The testimony presented during [the] hearing does not cause the [trial court] to alter its conclusion."

1. Williams argues on appeal that the trial court abused its discretion in denying his motion to withdraw his guilty plea because he did not knowingly, voluntarily, and intentionally waive the rights listed in *Boykin*. This claim fails.[7]

"After sentencing, a defendant may withdraw his guilty plea only to correct a manifest injustice." *Hood v. State*, 315 Ga. 809, 812

---

[7] Williams raises additional arguments for the first time in his reply briefs, but "[a]n appellant who raises an argument for the first time in a reply brief is not entitled to have that argument considered." *City of Atlanta v. Mays*, 301 Ga. 367, 372 (2017); see also *Williams v. State*, 307 Ga. 689, 689 n.2 (2020).

(2023). We have said that "withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges." Id. (citation omitted).

"[A] guilty plea is valid as a matter of federal constitutional law if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances." *Green v. State*, 318 Ga. 610, 636 (2024). "A voluntary and intelligent guilty plea is one that is made of the defendant's own choice with sufficient awareness of the relevant circumstances and likely consequences." Id. at 615–16 (quotation marks omitted). Such relevant circumstances and likely consequences typically "include the nature of the charge to which the defendant is admitting guilt, the factual basis of the charge, the punishment to which the plea will expose him, the terms of any negotiated agreement with the government, and the rights the defendant will waive by entering the plea." Id. at 616.

We have explained that, "[w]hen reviewing a trial court's

16

determination that a defendant's plea was knowing and voluntary, we review the court's factual findings for clear error, but the ultimate determination is reviewed de novo." *Harris v. State*, 319 Ga. 133, 137 (2024). And we will not disturb a trial court's decision on a motion to withdraw a guilty plea "absent an obvious abuse of discretion." *Wright v. State*, 314 Ga. 355, 358 (2022) (quotation marks omitted). "A trial court does not abuse its discretion in denying a motion to withdraw a guilty plea if the record supports the trial court's determination that a plea was made knowingly, intelligently, voluntarily, and without coercion." *Powell v. State*, 309 Ga. 523, 524–25 (2020).

Here, the record shows that Williams entered a voluntary and intelligent guilty plea. As the trial court found, Williams "was appropriately advised of his rights and … understood those rights" prior to entering his guilty plea. The trial court's conclusion is supported by the record, which shows that, at the plea hearing, the prosecutor described the factual basis for the plea as well as the rights that Williams would waive by pleading guilty; Williams

affirmed that he understood the nature of the charges to which he was pleading guilty, the minimum and maximum punishments for each of those charges, and the nature of a non-negotiated guilty plea; and Williams was allowed to speak to his plea counsel at five different points. Further, the trial court engaged in multiple colloquies with Williams to ensure that he wanted to enter a plea instead of continuing with the trial. During one of these colloquies, after Williams initially indicated that he was being forced to enter a plea, the trial court probed further, and Williams denied that anyone was forcing or pressuring him to enter a guilty plea. Additionally, Williams confirmed that he was entering his plea freely and voluntarily, and he told the trial court that it was in his best interest to enter a guilty plea. Thus, although Williams may have been hesitant to enter a guilty plea, the record shows that, under the totality of the circumstances, his plea was intelligently and voluntarily entered. See *Green*, 318 Ga. at 636.

Williams also argues that the record does not affirmatively show that he waived the rights mentioned in *Boykin*, and the trial

18

court therefore abused its discretion in denying his motion to withdraw his guilty plea. This argument is unpersuasive. We have explained that the failure to advise an accused of the rights listed in *Boykin* "does not require the reversal of a guilty plea where the longstanding intelligent and voluntary standard has otherwise been met." *Green,* 318 Ga. at 637 (quotation marks omitted). Moreover, the record shows that Williams *was* advised of these rights despite his non-response after the prosecutor asked whether he understood that he would be waiving those rights by pleading guilty. And, as set forth above, the record shows that Williams's guilty plea was voluntary and intelligent under the totality of the circumstances. As such, Williams has not shown that the trial court abused its discretion in denying his motion to withdraw his guilty plea on the basis that he did not affirmatively waive the rights listed in *Boykin* on the record at the plea hearing.

2. Williams also argues on appeal that the trial court erred in denying his motion to withdraw his plea on the basis that his plea counsel was constitutionally ineffective by coercing him to enter a

guilty plea. This claim fails.

As noted above, "[a]fter sentencing, a defendant may withdraw his guilty plea only to correct a manifest injustice," *Hood*, 315 Ga. at 812, and "[i]neffectiveness of counsel can constitute manifest injustice requiring that a defendant be allowed to withdraw his plea." *Powell*, 309 Ga. at 526. To establish a claim of ineffective assistance of counsel, Williams "must show both that his plea counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense." *Wright*, 314 Ga. at 357 (citing *Strickland v. Washington*, 466 US 668, 687 (1984)).

"To meet the first prong of the *Strickland* test," Williams "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Hood*, 315 Ga. at 812 (quotation marks omitted). For the second prong of the *Strickland* test, Williams "must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

20

have insisted on going to trial." Id. at 813. As we have explained, "where the defendant is unable to establish that counsel performed deficiently, the inquiry ends, and it is not incumbent upon this Court to examine the prejudice prong." *Goodwin v. State*, 319 Ga. 842, 845 (2024).

Further, "[t]his Court accepts a trial court's factual findings and credibility determinations on an ineffectiveness claim unless they are clearly erroneous, but we apply legal principles to the facts de novo." *Powell*, 309 Ga. at 526–27. "And in the absence of explicit factual and credibility findings by the trial court, we presume implicit findings were made supporting the trial court's decision." *Davis v. State*, 306 Ga. 430, 432–33 (2019).

Here, Williams has not shown that his plea counsel was deficient. Williams asserts on appeal that he received ineffective assistance of counsel because his plea counsel "spoke to [him] harshly, argued with him, raised his voice, and used curse words in directing him to take the plea, causing [him] to be coerced into entering the plea of guilty while under duress." In his testimony at

21

the hearing on the motion to withdraw his guilty plea, Williams stated that his plea counsel "was constantly pressuring [him] just to sign this plea that [he] was reluctant to sign." Williams further testified that this pressure was "overbearing" and "forceful" because Williams "didn't want to sign [the plea agreement]." However, Williams also denied that his plea counsel used "profane language."

When plea counsel testified at the hearing, he stated that he "never forced [Williams] to enter a plea," and he was confident that Williams understood the nature of a guilty plea despite Williams's reluctance to enter a plea. Additionally, although plea counsel testified that he "fuss[ed] at" and "argue[d] with" Williams; was "forceful" in his position regarding the plea; likely raised his voice; and "may have cursed" during the conversation, plea counsel stated that he did not threaten or physically touch Williams. And, while plea counsel indicated that he believed it was in Williams's best interest to enter a plea, he also stated that it was ultimately Williams's decision whether or not to do so.

Thus, in denying Williams's motion to withdraw his guilty plea,

it is clear that the trial court implicitly credited plea counsel's testimony over Williams's in finding that plea counsel's representation was not constitutionally deficient, and our review of the record supports this implicit finding. See *Goodwin*, 319 Ga. at 845 (noting that the trial court was entitled to disbelieve the defendant's testimony and to credit plea counsel's testimony). Moreover, to the extent Williams argues that he was coerced into pleading guilty because his plea counsel "spoke to [him] harshly, argued with him, raised his voice, and used curse words," Williams does not cite any Georgia cases supporting this proposition, and we have found none.[8] The record shows that Williams entered his plea freely and voluntarily—without coercion. Accordingly, the trial court did not err in concluding that Williams's plea counsel was not ineffective and denying Williams's motion to withdraw his plea on

---

[8] For this argument, Williams does not cite any legal authority other than Rules 1.4 and 2.1 of the Georgia Rules of Professional Conduct found in Bar Rule 4-102(d). As we have explained, however, "[a]n ethics violation ... does not necessarily establish a claim of ineffectiveness of counsel." *Moore v. State*, 306 Ga. 532, 537 (2019) (citing *Blackshear v. State*, 274 Ga. 842, 843 (2002)). Although "compliance with the Rules of Professional Conduct should always be maintained, attorney discipline for a violation of those Rules is not before us." *Green v. State*, 299 Ga. 337, 342 (2016).

this basis. As such, this claim fails.

3. Although Williams did not raise an issue with his sentence on appeal, we conclude that the trial court erred in sentencing Williams on Counts 11 and 12, and because the sentencing error penalizes Williams, we exercise our discretion to correct the error. See *Dixon v. State*, 302 Ga. 691, 697 (2017) ("For this reason, an exercise of our discretion on direct appeal to correct a merger error that harms a defendant (but of which he has not complained) may avoid unnecessary habeas proceedings and thereby promotes judicial economy."). Here, the trial court sentenced Williams for the aggravated battery of Fuentes (Counts 10 and 11) and the aggravated assault of Fuentes (Count 12). Because the injuries sustained by Fuentes—as alleged in Counts 10 through 13 of the indictment—occurred during a single, uninterrupted act, Counts 11 and 12 should have merged with Count 10.[9] See *Douglas v. State*, 303 Ga. 178, 183 (2018) (concluding that two counts of aggravated battery and one count of aggravated assault should have merged

_____

[9] The trial court properly merged Count 13 with Count 10 at sentencing.

because the "injuries were sustained by one victim during a single, uninterrupted criminal act"). We therefore vacate Williams's convictions and sentences on Counts 11 and 12. See id.

*Judgment affirmed in part and vacated in part. All the Justices concur.*